ESTES *vs.* KELSEY. ·

A *turnpike corporation* have a right to remove fences ·or other encroachments upon their road, and are not compelled to resort to a remedy by *action.*

The making and filing of the *map* of the route of a turnpike road required to be made and filed, is not a *condition precedent* to the right to enter upon lands for the purpose of making the road.

The map is but evidence of the rout of the road, and should be received as testimony, whenever made.

Nor is it material that the commissioners appointed to lay out the road should be together at the time of their certifying the map, provided they acted together in the designation of the route of the road.

ERROR from the Jefferson common pleas. Kelsey sued Estes in a justice's court in *trespass,* for throwing down and removing 25 rods of fence. The defendant, under a notice subjoined to his plea, justified the act as the *agent* of Vincent Le Ray de Chaumont, stating that the fence was removed from off a portion of a *turnpike road,* constructed by James Le Ray de Chaumont by virtue of an act of the legislature, of which portion of the road Vincent Le Ray was the lessee of James Le Ray. The cause was tried, and the *defendant* had a verdict. The plaintiff appealed to the Jefferson common pleas, and on the trial in that court, the plaintiff proved the acts complained of as a trespass. The defendant, in his defence, read in evidence the act of the legislature authorizing *James Le Ray de Chaumont* to make a turnpike road in the county of Jefferson, passed 31st March, 1815, and a certificate of the governor of the state, dated 11th January, 1819, stating that the inspectors appointed to view the road, had reported favorably to the due completion of the same, and authorising Mr. Le Ray to erect a gate and turnpike upon and across every ten miles of the road, and to receive the tolls authorised by the act. The defendant offered in evidence a *map* of the survey of the road, to which was attached the signitures of two of the commissioners appointed by the act, for the purpose of shewing the designation and route of the road, who certified that the same was an accurate map of the survey of

the road; but it appearing that the map was made and filed subsequent to the trial before the justice, and that the commis‑ sioners were not *together* when they signed the same, its ad‑ mission was objected to and rejected. The defendant then proved that the road was made and completed 14 years before the trial in the common pleas, that it was cut out 4 rods wide, and worked 2 rods wide, and was worked and completed over the lands now occupied by the plaintiff previous to such lands being occupied by any one or any clearing made thereon. The fences in question were built 3 or 4 years after the com‑ pletion of the road, and were placed 6 or 10 feet *within the four rods* cut for the road, just on the outside of the ditch, by means whereof a horseman was prevented from passing along be‑ tween the ditch and fence, which, in certain seasons of the year, was desirable, as the road sometimes was deep and miry. The road in question is the principal travelled road from the Black River county to Canada, and the Mail passes upon it daily. The lease to Vincent Le Ray and a direction from him to the defendant to remove the fences were proved. The court charged the jury that the road in question had been travelled for 14 or 15 yeas; it was not a *public highway*, not having been used as such for *twenty years*, and not having been laid out as a highway and recorded according to the statute, and that it could not be regarded as a *turnpike road*, as it had not been shewn that the act authorising its construction had been com‑ plied with, in reference to the designation of the route of the same, previous to the commencement of the suit, and shew‑ ing the precise bounds and bearings of the road; that if all the provisions of the act had been complied with, Mr Le Ray had no right to remove the fence *merely because it encroached upon the road*, that his right to do so depended upon the present and *urgent necessity of the case*, and such necessity had not been shewn; that Mr. Le Ray had the right to *prosecute a cvil action* for any injury to the road affecting the tolls, but as to the question before the court he had no greater rights than any other individual, and was not justified in removing the fences, and that the plaintiff was entitled to recover. The jury found a verdict in favor of the plaintiff for $25 damages. The

defendant having excepted to the decisions and charge of the court, sued out a writ of error.

*S. Beardsley,* for the plaintiff in error.

*H. Denio,* for defendant in error.

*By the Court,* SAVAGE, Ch. J. This case seems to me to turn on two questions: 1. Whether the proprietor of a turnpike road may lawfully *remove any encroachments* upon the road; 2. Whether the commissioners' map was properly excluded.

The court below considered the road in question as a public road, but not a road or highway under the act to regulate highways; in this, I think, they were right. The act to regulate highways has no application to turnpikes so far as remedy is provided for removing encroachments. The commissioners of highways have nothing to do with incorporated turnpikes; such roads are under the management of the companies to which they belong, subject to the laws regulating them. If encroachments are made, the proprietors or their agent must procure their removal in a lawful manner. The public have undoubtedly an interest in turnpike roads, and probably have the same rights as to abating nuisances, and travelling over adjacent lands in case of necessity, which they have in relation to public highways which are under the direction of commissioners of highways; but I waive the discussion of those topics at present.

The first question seems to be whether the road in question was a road of any description. It was not a public highway under our statute, because it was not recorded, nor had it been travelled for twenty years, and because also tolls were exacted upon it, which cannot be upon a highway other than a turnpike. Was it then a turnpike road within the true meaning of the statute of 1815? The intention of that act was to create a corporation, Mr. Le Ray being the only stockholder, or rather perhaps to confer on him in relation to this road all the rights and privileges which stockholders of other turnpikes have under the general statute in relation to such roads, subject to such alterations and modifications as were made by the act of

1815. By the general law on the subject of turnpikes, 1 R. L. 228, the president and directors of incorporated companies are to purchase the land over which the road is laid, and if the parties cannot agree upon the price, appraisers are to be appointed ; and upon payment of the purchase money or the appraisal, the title vests in the company. There is a map also to be made in such cases, but the filing of the map, although directed, does not seem to be a condition precedent to the vesting of any interest in the company, but it is expressly provided that until the damages either agreed upon or appraised shall be paid, it shall not be lawful for the company to enter upon the lands to make their road. In this respect the act authorizing Mr. Le Ray to make the turnpike in question is very different ; it enacts that it shall be lawful for him, after the route shall have been designated, to enter on and take possession of such lands as shall be necessary for making the road, and instead of requiring, as the act of 1813 does, that payment of damages shall be first made, the act of 1815 provides merely that Mr. Le Ray shall be liable to pay the value and damages, if demanded within 18 months after the route shall be designated. From the facts in the case, and from the statute, it may be inferred that the road was to be cut and made through a wilderness ; and hence the legislature seem to have thought that no damages would be sustained by making the road, but probably a benefit would accrue to the owners of the land over which the road would pass. It seems to me, therefore, that the mere designation, the surveying and making of the road, was all that was required to give to Mr. Le Ray a *right of entry upon the road*; a map was to be made, but the survey must of course precede the making of the map, and the map was intended to be filed as evidence of record of the site of the road. If I am right in this, then the filing of the map was not essential only as evidence, and was not a condition precedent to the vesting of an interest in the road in Mr. Le Ray.

It follows that immediately after the survey and designation, or marking the road by the commissioners, Mr. Le Ray had a right and was bound by the act to enter upon the ground so designated, and to cut out and clear off trees and

timber a road not less than four rods wide. The evidence is abundant independent of the licence from the governor, that the work was done, and opposite the fence in question, done as early as 1817. The act of 1815 does not declare as the act of 1813 does, that the company shall hold the lands forever, but it gives the proprietor the possession of the road, and all the rights, privileges, &c. granted by the act of 1813, subject to all the conditions of that act, except so far as is therein otherwise provided and enacted ; and a material difference between the acts is this, that nothing is said about payment of damages, as a condition precedent to the entry upon the land designated, and the making the road. According to my view of this case, the survey and designation of the road was all that was necessary to authorize an entry upon the land, and the performance of the condition by Mr. Le. Ray was shewn by the governor's licence to erect gates. From that time, at least Mr. Le Ray was invested with all the rights and privileges of any turnpike corporation. The map therefore was not important to him only as evidence ; it was the best evidence, and should therefore have been received, whether filed before or after suit brought. Nor does it seem to me material that the commissioners were not together when the map was signed ; they were together when the survey was made, of which the map is merely a written certificate. Although the map was excluded, parol evidence was admitted to shew that Mr. Le Ray took possession of the road and cut it out before the fence in question was made, or the farm of the plaintiff was cleared. The location of the road was shewn, and by that location, the fence in question stood upon the road. This brings me to the important question in that case, viz. whether the proprietors of a turnpike road have a *right to remove obstructions* from it.

The act relative to turnpike companies, passed March 13, 1807, 1 R. L. 231, declares that the president and directors of such companies, upon paying the owners of lands the sums agreed upon or assessed and awarded, shall have and hold such lands to them and their successors and assigns forever. The company becomes the legal owner. Their property is not like that of an individual, because the public

have a right of passage, paying tolls, and the owners have no right to use it for any other purpose but a road. The right of property, however, seems to be vested in the company as completely as in an individual. If any injury is done to the road, there can be no doubt that an action lies by the company in its corporate name. If part of the road is enclosed in a fence, an action may be brought; if a fence should be built across the road, the person offending would be liable in an action. But is the company obliged to resort to an action? must they permit the road to be stopped, and remain so until an action can be brought and disposed of? This will hardly be gravely asserted. In the case of *Hyatt* v. *Wood*, 4 Johns. R. 150, Chief Justice Spencer says: "At common law, and prior to the statutes to prevent forcible entries, whenever a right of entry existed, the disseisee might lawfully regain the possession by force. With respect to real property, the owner having a right of entry, may since the statute, enter peaceably upon one who is in possession without right, by the very terms of those statutes. If the entry in such case be with strong hand or a multitude of people, it is an offence for which the party entering must answer criminally; but it would be an absurdity to say that he must also be responsible in damages, as for an injury to the person who has no right, but is himself a wrong doer in consequence of his illegal entry."

That doctrine is peculiarly applicable to the case of a turnpike road, and shews conclusively that the company or their agents may remove obstructions from the road. I have already shewn that Mr. Le Ray had done all that was required of him to vest the property of the road in him[a]; he therefore had a right to remove the fence in question. The court below erred in rejecting the map, and in deciding that the defendant had no right to remove the fence.

Judgment reversed; *venire de novo* to be awarded by Jefferson common pleas; costs to abide the event.