No. 6.—Doe, *ex dem.* JOHN JOHNSON and others, plaintiffs in error, *vs.* JOHN & JAMES LANCASTER, defendants in error.

[1.] Prior possession will prevail in ejectment, over a subsequent possession, acquired by mere entry, without any lawful right. But where the subsequent possession is acquired by a recovery in ejectment, the entry of the defendant being lawful, affords a better presumption of right than the prior

possession; and the record of the former recovery may be given in evidence, if between the same parties.

[2.] A party who brings a second action of ejectment, after being ousted under a previous recovery against him, must produce paramount title.

[3.] Seven years adverse, uninterrupted, and continuous possession, confers a complete title to lands, tenements, and hereditaments in this State.

[4.] The Supreme Court of this State is strictly an appellate tribunal, for the re-examination and correction, if erroneous, of the decisions, sentences, judgments and decrees of the Superior Courts, and upon questions actually presented for their determination.

Ejectment, in Talbot Superior Court, tried before Judge ALEXANDER, March Term, 1848.

The facts are fully set forth, in the opinion of the Court.

WORRILL & HILL, for plaintiff in error.

SMITH, and JONES, BENNING & JONES, for defendant.

Argument of Mr. HILL, for plaintiff in error.

1st. In this case the plaintiff insisted before the jury, that the title to the premises in dispute, was originally in plaintiff's lessor, Johnson. And he was *still living*.

2d. But if the jury should believe that Johnson, the plaintiff's lessor, was dead, then this plaintiff's lessor, Rushes, had title by adverse possession under color of title, for seven years in opposition to that title; and could maintain ejectment upon it. *Stokes vs. Berry*, 1 *Salk.* 421. *Taylor vs. Harde*, 1 *Bur. R.* 119. 2 *Sand. R. note a*, 175. *Angel on Limitations*, 398. *Adams on Ej.* 77. 3 *J. R.* 270.

3rd. And that the right is not at all affected by the fact, that a recovery has been had in ejectment against plaintiff's lessors, Rushes, after the seven years complete. 1 *Burrow*, 113. 16 *J. R.* 314. 6 *Cowen*, 751. 5 *S. & Rawle*, 234. 8 *East*, 450.

4th. In those cases where the plaintiff relies on previous possession of less than seven years, (or twenty, as the case may be,) then it becomes important to consider several incidents, as to *how* he became dispossessed; whether ousted, or by voluntary abandonment, without *animus revertandi*, or whether *evicted* by legal

Johnson and others *vs.* Lancaster.

process, founded on a judgment in ejectment. *But in such cases only.* 16 *J. R.* 314. 6 *Cow. R.* 751. 10 *J. R.* 364.

In this case the plaintiff made no point to the Court or jury, that was not based on the assumption, (and to be found by the jury,) that the ancestor of the co-defendants, *was not the drawer of the land.*

And that either the plaintiff's lessor, Johnson, was entitled to recover or the lessors, Rushs, by reason of their possession adverse to their other lessor, for seven years complete. Plaintiff *waived all other issues.* The sum of all, as to the authority, amounts to this, that the only effect of a judgment in ejectment, is, that it *rebuts a presumption of title, founded on a previous possession of less than seven years, and puts the plaintiff to proof of his title.*

Then, of what possible use could the rejected judgment be in the case? What could it elucidate? and why should a new trial have been granted for its rejection?

It could only have been relevant to the issue as proof of a mere possession for less than seven years, and such an issue was not made, and the Court have so stated in the bill of exceptions, and if error was committed in its rejection, the Court will not grant a new trial, for a mere abstract error committed on the trial.

The Court, will bear in mind, also, that the Lancasters were in possession, *and* that they were not parties to the rejected judgment.

Now is there any proof showing any connexion or privity between *their* possession and the co-defendant's claim of title? They are strangers to each other, no privity being shown, even in the order making parties.

The verdict, then, is neither against law nor evidence, and the Court committed error in granting a new trial.

As to what constitutes adverse possession, see *Angel on Lim.* 415, 427. *Adams on Ej.* 438. *La Frombois vs. Jackson,* 603.

As to the rule for granting new trials where the verdict is against the weight of evidence, see *Peck vs. Land,* 2 *Kelly,* 1.

*By the Court.*—LUMPKIN, J. delivering the opinion.

An action of ejectment was brought by John Doe, *ex dem.* of John Johnson and others, against James and John Lancaster, to

recover lot, No. 204, in the 22d district, of Talbot county. Two demises were laid in the declaration; one in the name of John Johnson, the supposed grantee of the land; another in the name of the heirs and legal representatives of Abraham Rush, dec'd, to whom John Johnson conveyed. On the trial, the plaintiff introduced a grant from the State of Georgia, to John Johnson, of Clements' district, Jasper county, dated in 1828, and a deed from Johnson to Rush, dated in November, 1834. He proved that Rush went into possession in 1832 or 1833, under a bond for titles, when the place was in the woods; that he had made improvements, and otherwise used and cultivated the place as his own, and continued in the occupancy down to his death, in 1840, and that his family resided after him on the premises, up to 1845. He proved the possession of the Lancasters at the time suit was commenced, and closed his case. Eliab W. Wells as administrator of John Johnson, deceased, and Eliab W. Wells and Willis Johnson, heirs at law of said deceased, were on motion made parties defendants to the action.

It may be well enough to remark, by way of explanation, that there were two John Johnsons, and the question here, was one of identity, as to who drew the land, and that the John Johnson under whom the plaintiffs claimed, was not the same, under whom the defendants set up title.

Defendants introduced the interrogatories of John Johnson, the deedor of Rush, and divers other testimony, to show that the John Johnson under whom the defendants claimed was not the drawer of the lot of land, and that Rush knew the fact when he purchased. He also offered in evidence, the record of a former recovery, at the instance of the heirs and legal representatives of John Johnson, the co-defendants in this suit, against the plaintiffs or part of them, of the premises in dispute. But this evidence being ruled out, the defendants closed their case. The plaintiff produced no rebutting proof to sustain his title, and the case was then submitted to the jury, under the instructions of the Court.

It becomes important to the proper understanding of this case, to notice the exact footing upon which the counsel for the plaintiffs, and the Court, put the plaintiffs' rights to recover. Mr. Hill, whose conduct in the management of the cause, confers the highest encomium upon his legal learning and acumen, conten-

ded that the plaintiff was entitled to recover on the demise of John Johnson, on the ground that the John Johnson of Clements' district was the true drawer of the land, and not the John Johnson who died in Pike county, and under whom the defendants claimed title. Also that Abraham Rush was a *bona fide* purchaser of the land, that he took possession of the same, and held it adversely, peaceably, and continuously, under color of title, and claim of right for more than seven years before his death; and if the jury should so believe, then the plaintiff would be entitled to recover, especially, if they should farther believe, from the testimony, that the John Johnson, under whom the defendants claimed, and who died in Pike county, was not the drawer of the land. " But said plaintiff's made no point before the jury, and asked for no charge of the Court, in relation to Rush's possession, and those claiming under him, except as to adverse possession, under color and claim of title, and for a period of seven years or more."

Thus it will be perceived, that counsel for plaintiff distinctly disclaimed any right to recover under a possession, short of seven years or more; and under circumstances which gave them a good and complete statutory title.

The Court charged the jury, that although they should believe that the John Johnson testified to, by the plaintiff's witnesses, was the drawer of the land; yet, if they should farther find, from the evidence, that he had moved away, and had not been heard of for seven years or more, then the plaintiff could not recover on the demise in his name, as they must presume he was dead. The Court farther charged the jury, that if they believed from the evidence. that the lessors, Rushs and those under whom they claimed, " had been in the actual, uninterrupted and continuous possession of the premises in dispute, under a *bona fide* claim of right, and held the same adversely, under color of title, seven years, complete, and had not voluntarily abandoned the possession afterwards—then the plaintiff ought to recover, if they should believe, farthermore, from the evidence, that the defendants were base trespassers, or had forcibly ousted the lessors Rushs from the possession. The Court, on being asked by defendants' counsel, charged farther—that if the defendants, or any of them had a regular and perfect claim of title from the State, and had the peaceable possession of the premises in dispute, then the plaintiff could not recover on a previous adverse

possession of seven years, under color of title, with the farther charge, that in *that* case, the jury must farther believe that said previous adverse possession had been voluntarily abandoned.

" *The Court made no charge to said jury as to any previous possession by said plaintiffs, or any of them, or of those under whom they claimed, except as to such as the jury should believe, from the evidence, to have been* bona fide, *and under color of title and uninterrupted and continuous, and for a period of seven years, at least.*"

The jury, under the charge, rendered a verdict for the plaintiffs, in other words, they found that the plaintiffs had made out a good statutory title.

An application was made for a new trial, on the grounds—

1st. That the verdict was contrary to law.

2d. That it was contrary to evidence.

3d. That the Court erred in rejecting the record of the former recovery.

The motion was granted upon the last ground alone ; and thereupon, plaintiffs, by their counsel, excepted.

Ought the new trial to have been awarded?

[1.] For the purpose of deciding this question correctly, it is important to observe the time when it was made. The record of the former recovery was offered by the defendants for the purpose of putting the plaintiffs upon proof of their title. Had the record been between the same parties, *as it was not,* it would have been admissible for the object for which it was adduced. For a possession acquired under the authority of a judgment at Law, affords a better presumption of right than the preceding possession, which had been overcome and lost by the action at Law, and consequently, the presumption which would naturally attach to the prior possession, is here shifted from the prior to the subsequent possession. And Courts will not stop to inquire how the judgment has been obtained. The intendment of law is, that it has been regularly and lawfully obtained, either from want of title, or want of attention in the opposite party. Otherwise, the action of ejectment would be a useless ceremony—an idle and absurd farce.

[2.] We repeat, in order to be distinctly understood, that after a recovery in ejectment, although the right of possession may be litigated again, yet a mere naked prior possession, uncoupled with any evidence of a right of possession, is not sufficient to entitle to a recovery against one who has entered under the judg-

ment. Possession is evidence of title ; for it is to be presumed that the party who has possession, has it rightfully; but that presumption ceases when the title appears on the other side.

Had the defendants then, at this stage of the proceeding, excepted to the decision of the Court rejecting this record on the trial, and submitted to a verdict, the case might have been different. At any rate, we are clear that the presiding Judge erred in rejecting it at the time when it was offered. But the plaintiffs' counsel, with a clear perception of his case, supplied all the proof which the introduction of this record would have imposed upon him. The defendants have lost nothing by its rejection. It would only have shifted the burden from their own to the shoulders of their adversary. The task has been voluntarily assumed. The plaintiffs' counsel in his argument, and the Court in its charge, utterly repudiate a possession which is stripped and divested of all right. Could possession, commenced under the high presumption of title, which the judgment of Law affords, have done more for the party. The record could not have helped them. The plaintiffs exhibited paramount title, a title which overrides the possession of the defendants, sanctioned or legitimatized as it may be, by their lawful entry under a judgment of former recovery. Why allow a new trial then, because this evidence was refused? The result must inevitably be the same.

[3.] But is a statutory title a paramount title? It is unquestionable, that where land has been held adversely, for the time prescribed by the Statute, and an entry is made by the party who has the written title, such party may be dispossessed by an ejectment brought by him who has so held. *Cincinnati vs. White*, 6 *Peters U. S. Rep.* 431. *Jackson vs. Pontes*, 1 *Paine C. C. Rep.* 457. *Decatch vs. Newsam*, 3 *Ohio Rep.* 57. *Jackson vs. Olts*, 8 *Wend. Rep.* 558. *Day vs. Alenson*, 9. *Ib.* 223. *Jackson vs. Rightnyer*, 16 *Johns.* 314. *Gibson vs. Bailey*, 9 *N. H. R.* 168. We rest this doctrine, however, upon the express provisions of our own Statute. Section 1 of the Act of 1767, declares that all writs of formedon in descender, in remainder and in reverter of any lands, tenements and hereditaments, or *any other writ, suit or action whatever*, at any time thereafter to be sued or brought by occasion or means of any title or cause which has accrued before its passage, or which may thereafter descend, happen or fall, shall be sued and taken within seven years, next after the passing of this Act or after the cause of action accrues, *and at no time after the said*

*seven years.* And that no person having any *right of entry* into any lands, tenements or heriditaments, shall make said entry, *but within seven years* after the passage of the Act, or the right of entry accrues. *And that in default thereof, such person so not entering, and their heirs shall be utterly excluded and disabled from such entry after to be made.* Next follows a saving in favor of infants, *feme coverts,* lunatics, persons imprisoned and *beyond seas:* which last class are excluded from the exception by the reviving statute of 8 December, 1806. *Prince,* 517. Sect. 2, is for the purpose of quieting certain titles therein specified.

Section 3d applies the provisions of Section 1st to under-claimants, and directs *that the Act and the several clauses thereof, may be given in evidence to the Jury, upon a trial of any claim, matter or right, to any lands or tenements in question between party and party, and that Chief Justice and Judges, upon all such trials, shall allow the same to be given in evidence, so far as concerns the said matter in difference.*

And to prevent dispute, how claims are to be made to lands, and that the possessors of lands may know how and in what manner other persons having claim to any lands or tenements in their possession, must claim the same, &c. Section 4th enacts that all persons laying claim to lands, must proceed by action at Law, &c. *Prince,* 573, 4, 5.

Can any one read this Statute and doubt the policy which dictated it? The head and front of its passage, evidently, was to quiet men's possession in this wilderness territory, a paramount consideration in all new countries especially. Nothing is so well calculated to prevent population, as doubts and difficulties about land titles. The Act of 1767, intended to place all real and mixed actions upon the same footing, and to require every writ, whatever, for the recovery of land, to be instituted within seven years. With us, ejectment has always been the usual, if not the only remedy. It is so now in England, since the Statute 3 and 4, *Will. IV. ch.* 27, abolishing all other forms of real action. If the person holding the paper titles, sleeps over his right, for seven years after the cause of action accrues, the right of entry and of property, too, are lost. The occupant has acquired an indefeasible title; one that is not only sufficient for protection, but also for recovery against all the world. When called upon for the muniments of his title, he points to the Statute, and gives it in ev-

Johnson and others *vs.* Lancaster.

idence, as he is authorized to do, in all matters of difference between him and others. A *mere writ of right*, the highest remedy known to the laws, respecting lands, and one of so forcible a nature that it overcomes all obstacles that may have arisien to cloud and obscure the title, was lost by the lapse of sixty years, in England. *Seven years time will produce the same result here, under our Statute.* The construction which British Statutes have received in England, may very properly be considered as accompanying the Statutes themselves, and forming an integral part of them. In adopting the Statute of frauds, therefore, we are bound by the construction which it had received in England, up to the separation of this country in 1776, notwithstanding the best Judges are of the opinion, that the relaxation ought not to be carried farther than it has been carried. And in that opinion, this Court entirely concurs. But our acts of limitations are entirely our own; and however decisions made in England or in our sister States, on Statutes containing provisions similar to our own may be respected, and certainly they are entitled to great respect, still their absolute authority is not admitted. We cannot imagine a more fruitless labor, than to undertake to reconcile, or to follow the ever varying construction of different Courts, respecting these Statutes, or to hold ourselves bound to fluctuate with them. Our acts are the best expositors of themselves. And we shall not feel at liberty to create exceptions, where the Legislature has not seen fit to make any. If the law declares that certain suits must be brought within a limited time, after the right of action accrues, and not thereafter, the language of the Legislature being plain and imperative, it must be obeyed. We will endeavor, at least, to shun the censure cast upon Courts by a distinguished foreign statesman and jurist, viz : that there was hardly any vestige left of the relief, which a Statute of limitation was intended to afford, owing to the exertions of the Courts in finding means to evade its beneficial operations.

It is said, however, that if the judgment of the Court was correct on this ground, still, a new trial ought to have been granted, because the verdict of the Jury was contrary to evidence; and counsel have entered into an elaborate examination of the testimony adduced in the trial, to convince the mind of the Court of that fact.

[4.] It will be recollected that the Court below expressed no

opinion upon this ground, in the application made for a new trial. A very grave question then, is presented for our consideration ; one involving the nature and extent of the powers of this Court. I intimated pretty strongly, my individual opinion respecting this matter, in the case of *Persons, Adm'r, vs. Hight, Ga. Rep.* 480, decided at Milledgeville in May last. I am happy to find that my colleagues agree with me, fully, in the views there expressed. We believe that it was evidently the intention of the framers of the amended Constitution, as well as of the Act under it, organizing this Court, that it should be strictly an appellate tribunal, for the examination and correction of erroneous "decisions, sentences, judgments or decrees," actually made by the Superior Courts, and upon questions which were actually presented for their determination.   And that we can only look into the record, apart from the case made by it, for the purpose of "awarding such order and direction in the premises, as may be consistent with the law and justice of the case."   And we feel well assured that no error can occur in the proceedings of the Circuit Courts, which the party may not have reviewed here, provided he is vigilant in having it presented and decided in the first instance below.   It was the privilege of the defendant to have insisted on the judgment of the Superior Court, upon all the grounds embraced in his motion.   He has seen fit to risk his case upon a single point ; he must abide the consequences.

It results, therefore, that there is error in the judgment granting a new trial, and that, consequently, it must be reversed.