## SMITH and others *vs.* HELMER.

Where the title of a statute was, " an act to provide for the construction and alteration of the highway *between* the village of Herkimer and Middleville," and the first section appointed commissioners " to alter, reconstruct, and improve the public road leading *from* the village of Herkimer to the bank of " a creek within the village of H. " and thence along or near the bank of the said creek to the village of M. ;" *Held* that the word *from*, in the act, must have a reasonable construction, in reference to the subject matter ; and it appearing that unless it was adjudged to include some part of the village of H. the object of the grant could not be accomplished, nor the entire road be improved, it was *also held* that the word " from" must be taken inclusively, and not so construed as to prevent the commissioners from entering upon lands within the limits of the village of H.

*Held further*, that to affect the construction of the statute, and to show that the legislature intended to authorize the making and alteration of the road within the village of H., evidence that the particular road was the only road answering the description in the statute, was competent.

In a case of doubtful meaning, reference may be had to extrinsic circumstances, to ascertain the intent of the legislature, in the use of particular words.

Such evidence is proper, whenever words may have different meanings, under different circumstances.

A statute providing for the construction and alteration of a highway within the limits of an incorporated village, and appointing commissioners for that purpose, but which does not profess to, and does not, impair or abridge, or enlarge the rights, duties, or powers of the trustees of the village, as commissioners of highways, will be considered as merely an exercise, within the corporate limits of the village, of the right of *eminent domain*, with which the state has never parted.

Such a statute does not require a two thirds vote, to render it operative within the limits of the village, under the section of the constitution of 1821, requiring the assent of two thirds of the members of each house to every bill creating, altering, or renewing any body politic or corporate.

Laws affecting municipal corporations may be passed by mere majority votes.

The notice required by the statute, (1 *R. S.* 155, § 1,) to be given of an intended application to the legislature for an act authorizing the making or improving of a road, was calculated merely to guard the legislature from surprise and fraud, and to prevent hasty and improvident legislation.

The law requiring such notice to be given did not confer any new power upon the legislature, depending upon the publication of the notice. It is a rule made by the legislature for its own convenience, and may be entirely disregarded, without affecting the validity of the act.

Smith *v.* Helmer.

But if a compliance with the requirement were necessary to the validity of the act, as affecting the regularity of its passage, and its validity could be questioned in a collateral manner, for the want of the proper notice, the publication of the notice required by law would be presumed. *Per* ALLEN, J.

Parol evidence of the action of commissioners appointed under and in pursuance of an act to provide for the construction and alteration of a highway, in relation to the alteration of the road at a particular place, at a meeting of all the commissioners upon that subject, is admissible; where it does not appear that any record of the proceedings at that meeting was kept, and the statute did not, in terms, require a record of the proceedings of the commissioners to be made.

Where, in an action of trespass *quare clausum fregit*, the defendant justifies under an act providing for the construction and alteration of a highway, alledging that he did the acts complained of, by the direction of the commissioners named in the act, and for the purpose of altering the road at the place in question, evidence showing that all the commissioners met and conferred together upon the subject matter of the alterations, and assented to them, and conferred upon one of their number authority to execute their determination, and make such alterations, under whose directions and instructions the defendant acted, is sufficient to sustain the defence.

Where an act, authorizing the taking of private property for public purposes, provides for a just compensation to the owner, it is not unconstitutional because it omits to make the assessment and payment of damages a condition precedent to an entry upon and occupation of the premises.

It is sufficient that the act makes provision for compensation to the owner. The assessment and payment of damages need not precede such entry and occupation.

THIS was an action of trespass *quare clausum fregit*, tried at the Herkimer circuit in December, 1848. The *locus in quo* was situated within the village of Herkimer, and the alledged trespass consisted in the removal of a fence on the line of a road. The defendant justified under the act of May 12, 1846, (*Laws of* 1846, *p.* 305,) alledging that the fence was removed by authority of the commissioners in that act named, and to shorten and straighten the road therein mentioned. The removal of the fence by the defendant was proved, and that the premises were about one-fourth of a mile from the compact part of the village of Herkimer; that the road passing the premises runs to the bank of the West Canada creek, and up along the creek to Middleville; and that there was no other road answering the description. The defendant gave in evidence the act above mentioned, and a diagram of the village of Herkimer, and of the premises, with the adjacent road or street, and proved

that 20 or 30 days before the removal of the fence the three commissioners named in the act met at a place called the dugway, on the line of the road from Herkimer to Middleville, and conferred upon the subject of the alterations they thought necessary to be made; that but three alterations were talked of then, and the alteration of the line of the road at the *locus in quo* was one of them. That the commissioners then directed one of their number to go on and survey it out and do the necessary work upon it; that it was agreed that the road should be widened and straightened at that place; and it was left to one commissioner to employ a surveyor and do the work. The defendant proved that the road was surveyed and staked out under the direction of the commissioner, and that such commissioner and one other of the commissioners, at a subsequent meeting, agreed that it was correctly done, and that the fence was removed in pursuance of the directions of the commissioner, to whom the work had been intrusted by the commissioners, at their first meeting. Several questions upon the admission of evidence, as well as upon the merits, were made upon the trial; and at the close of the evidence the judge directed a verdict for the defendant; and the plaintiff now moved for a new trial, upon a bill of exceptions.

*G. B. Judd*, for the plaintiff.

*C. A. Benton*, for the defendant.

*By the Court*, ALLEN, J. The first exception taken upon the trial was to the admission of evidence on the part of the defendant, of the location of the premises within the village of Herkimer. There can be no doubt that it is the right of a party, in all actions of this kind, to locate the premises by the evidence as particularly as he pleases. It is the duty of the plaintiffs in the first place to show the situation and location of the premises in question; and it is the right of the defendant to show the particular description and location. The evidence may be important upon questions of title, boundary, or damages.

The evidence was clearly admissible, and no question upon the effect to be given to it is presented by this exception. The plaintiff also excepted to the admission of evidence that the road passing the premises in question was the only road leading from the village of Herkimer to East Canada creek, and thence to Middleville. It was competent for the defendant to show that this road answered the description in the statute designating the road to be improved. This was necessary to the justification of the defendant, and to connect his acts with the authority conferred by the statute. And proof being given that this road in question corresponded with the description in the statute, it would necessarily follow that the court and jury must apply the act to that road, unless it was known that there was another road to which the description would equally apply. In that case there would be an ambiguity to be explained by extrinsic evidence. In this case there was no evidence that there was any other road to which the entire description could apply; so that evidence that this was the only road leading from Herkimer village to the West Canada creek, was entirely unnecessary with a view to determine what road was intended by the act. But it was nevertheless competent, with a view to put beyond a doubt that which would, without such evidence, be merely a legal and necessary inference from the other evidence. The evidence was proper upon another point in the case to which it is not necessary to refer in this connection. The defendant then offered as evidence the act under which it was alledged the entry was made upon the plaintiffs' premises, viz.: "an act to provide for the reconstruction and alteration of the highway between the village of Herkimer and Middleville, in Herkimer county," passed May 12, 1846, which was objected to, for several reasons which will be noticed in their order. The plaintiffs excepted to the decision admitting the act in evidence. The first objection was that the act was inoperative within the village of Herkimer, for the reason that the road mentioned in it started from the village of Herkimer and not from any point within the corporate boundaries, and therefore an entry upon the plaintiffs' premises within the limits of

the village, was unauthorized. The title of the act, (*Laws of* *1846, p.* 305,) is "to provide for the construction and alteration of the highway *between* the village of Herkimer and Middleville," and the first section of the act appoints commissioners "to alter, reconstruct, and improve the public road leading *from* the village of Herkimer to the bank of the West Canada creek, and thence along or near the bank of the said West Canada creek to the village of Middleville." The word "from," in the act, must have a reasonable construction in reference to the subject matter; and unless it is held to include some part of the village of Herkimer, the object of the grant, which was to construct a good road from the village of Herkimer for practical purposes, and therefore necessarily from the compact part of the village, can not be accomplished. Neither can the entire road described in the act be improved; for a part of that description is of the road within the village, and will apply to no other road, nor to that road, without the village. The road described leads *from* the village of Herkimer to the bank of West Canada creek, &c. This is the only road that answers the description, and it reaches the bank of the creek within the village. It therefore follows that *from* must be taken in this case inclusively. "*From*" is opposed to "*to*," and the latter word has been taken inclusively in a case on all fours with the one before us. (*Farmers' Turnpike Co.* v. *Coventry,* 10 *John. Rep.* 389.) And in that case, as well as in *The Mohawk Bridge Co.* v. *The Utica & Schenectady Railroad Co.* (6 *Paige,* 554,) reference was had to extrinsic circumstances, to ascertain the intent of the legislature in the use of particular words. That must be proper when the words may have different meanings under different circumstances, as in this case. In the latter case it was held that the words "at or near" might, and did, include a point *within* the city of Schenectady. If, in this case, the act had authorized the construction of the road from Middleville *to* Herkimer, it would have been precisely within the decision in the *Farmers' Turnpike Co.* v. *Coventry,* and it can not affect the construction of the act that the terminus at Herkimer is first named in the description of the road. To

affect the construction of the statute and show that the legis-
lature intended to authorize the construction of the road within
the village of Herkimer, the evidence that this was the only
road answering the description in the statute was competent.
Extrinsic evidence is admissible, and frequently resorted to, to
aid the court and jury in the application of terms used in a
statute. (*United States* v. *Breed,* 1 *Sumner's Rep.* 159.
*Hayden's case,* 3 *Coke's Rep.* 7 b. *Devonshire* v. *Lodge,* 7
*B. & Cress.* 39.)

It was next objected that the act was not passed by a vote of
two thirds of the members elected to the legislature, and that
therefore it was inoperative, within the limits of the village of
Herkimer. By section 9 of article 7 of the constitution of 1821,
the assent of two thirds of the members elected to each branch
of the legislature was required to every bill creating, continuing,
altering or renewing any body politic or corporate. But the act
in question does not profess to be an act of that character. It
does not affect the corporate rights of the village of Herkimer.
It neither adds to, nor detracts from, the powers of the officers
of the corporation or the corporators. It is but the exercise,
within the corporate limits of the village, of the right of eminent
domain, with which the state has never parted. The powers
and duties of the trustees of the village, as commissioners of
highways, are not impaired or enlarged by the act. (*Ontario
Bank* v. *Burrell,* 10 *Wend.* 86.) In *Mitchell* v. *Halsey,* (15
*Id.* 241,) and *Whitney* v. *Johnson,* (12 *Id.* 359,) general laws
were held not applicable to, or controlling, the jurisdiction and
powers of officers of municipal corporations, for the reason that
they were not within the words of the acts, and not because the
acts required two third votes. (*See Graves* v. *Otis,* 2 *Hill,* 466,
471. *Hart* v. *Mayor of Albany,* 3 *Paige,* 213. *People* v.
*Morris,* 13 *Wend.* 325.) It was insisted by the plaintiff, thirdly,
that the act was not properly in evidence for the want of proof
that notice of an application therefor had been published pursu-
ant to 1 *R. S.* 155, § 1. Such proof can not be necessary. It
is mere evidence of the sense of the profession, and the under-
standing of our courts, upon this subject, that while our books

Smith *v.* Helmer.

of reports are full of cases involving questions upon private acts of incorporation, and other acts plainly within this provision, no question of this kind has ever been made. It is true, this is not conclusive, but is a consideration entitled to some weight upon a doubtful question. But I have no doubt upon the subject. The legislature had full power and authority to enact this law, under the constitution from which it derived its power. The law requiring notice did not confer any new power upon the legislature, depending upon the publication of the notice. It was a direction to the public, calculated merely to guard the legislature from surprise and fraud, and to prevent hasty and imprudent legislation. It was a rule made by the legislature for its own convenience, and might be entirely disregarded. A law within the terms of the requirement would be valid, although no notice of the application was published. But, as was said before, the legislature had jurisdiction in the premises without reference to the act, and if a compliance with its terms were necessary to its validity as affecting the regularity of its passage, and its validity could be questioned in this collateral manner for the want of the proper notice, the publication of the notice required by law would be presumed. *Omnia presumentur rite et solemniter esse acta donec probetur in contrarium.* (*Co. Lit.* 6 *b. C. & H. Notes, note* 296, *p.* 288.)

The plaintiff objected to proof by parol of the action of the commissioners in relation to the alteration of the road at the place in question, at a meeting of all the commissioners upon that subject, and excepted to the ruling of the judge admitting such evidence. It did not appear that any record of the proceedings of that meeting was kept, and the act under which the commissoners acted did not, in terms, require a record of their proceedings. The only note or memorandum of their proceedings which the commissioners were expressly required by the terms of the act to make or keep was that required by section 7. By that section they were required to cause a map and description in writing, signed by them or a majority of them, of the changes and alterations of the route on said road, to be filed in the office of the town clerk of the town of Herkimer. This

Smith *v.* Helmer.

was not a condition precedent to their entry upon the lands to be taken. A survey and examination was first to be made, and the making the map, if not the survey, was necessarily preceded by the determination of the commissioners to make the alterations. This determination must necessarily rest in parol until the record of the alterations was made and filed. No record or memorandum which the commissioners could make, except the map and description of the alterations, would be evidence of their acts. An omission to reduce their proceedings to writing in the form of a record, that duty not being required by the act, can not invalidate them. It was, I think, clearly competent for the defendant to show by parol that the three commissioners met, deliberated, and agreed upon the alterations in question. 1. It was not required by the act that any record of their proceedings should be made. 2. If made and kept it would not have been evidence of the facts stated. 3. The fact that all the commissioners met and acted in the premises was necessary to justify the acts of the defendant under an order proceeding directly from one of them, acting by authority of all, and to sustain and authenticate the map and description of the alterations afterwards made and filed, signed by only two of the commissioners. The evidence of this fact necessarily rested in parol.

The next exception was to the admission of evidence of what transpired subsequently between two of the commissioners, one of whom had been authorized by all to make the proposed alterations, and is untenable. There can be no doubt that the three commissioners having met and consulted and agreed upon the alterations, the power to make them might be deputed to and vested in one of their number. The object of a joint meeting was fully obtained, and the judgment of all was exercised upon the subject matter of the power ; and the execution of the determination was a ministerial act. Indeed, the three having met and conferred, any two of them could have subsequently agreed upon a plan of alterations; they having had the benefit of the advice and suggestions of their fellow commissioner. (*Rogers* v. *Rogers,* 7 *Cowen,* 526, *and note* (*a*) *at end of the*

*case.*)    But the evidence was material, and was admitted only to show that the commissioner to whom the power had been delegated had performed the duty imposed upon him by all the commissioners in respect to the alteration of the road at the place in question.   It was a part of the *res gestæ.*   It is very clear that it was not proper to show the acts of the two as the acts of the board of commissioners, and the evidence was not admitted with that view.   The acts of the defendant must be justified under the determination and orders of the commissioners at a prior meeting.   The evidence of what Commissioner Barckley said at the subsequent meeting is entirely immaterial, and can not affect the result of the case.   If, however, the three commissioners had, at a meeting for that purpose, agreed upon and determined to make the alterations in question, as it appears they had done, then any of the commissioners, whether expressly authorized or not, could execute this determination, and carry out the plan adopted by the three.   (*Bronson* v. *Mann,* 13 *John.* 460.)

The next point made by the plaintiff upon the trial was upon the admission of evidence of the appointment of Spencer as a commissioner in place of Caswell, who declined further to act. This appointment was made in July, 1846.   The county judge of Herkimer county was authorized by the act to fill any vacancy which might occur by the death, refusal, or neglect to serve, of any of the commissioners.   At the time of the refusal of Caswell further to serve as a commissioner, the duties of the commissioners, in respect to the alteration in question, were not fully performed.   The map and description required by law had not been made or filed, and the damages of the plaintiff had not been assessed or paid.   The refusal of Caswell longer to serve did not annul the proceedings of the commission up to that time, but such prior acts were valid, and to be completed by the new board after the vacancy was filled ; and although it was not material to the justification of the defendant to show that the commissioners ever entirely completed their duties by making and filing a description of the road, still, if the defendant, for any reason, chose to do so, the evidence was competent, as

Smith *v.* Helmer.

proof of the vacancy, and the appointment of Spencer to fill it, was necessary to show his authority to sign the map and description.

So of the next objection of the plaintiff, which was to evidence of the map and description of the alteration signed by only two of the commissioners, and made and filed in January, 1847. It was not necessary to the justification of the defendant to show that any map and description of the alterations had been made and filed by the commissioners. The making it was not a condition precedent to an entry upon the plaintiff's premises to make the alterations. (*Estes* v. *Kelsey*, 8 *Wend.* 555. *Woolsey* v. *Tompkins*, 23 *Id.* 324. *Hallock* v. *Woolsey, Id.* 327.) If the commissioners were authorized, upon making the map and description, to enter upon the premises and make the alterations, the defendant, who was a mere servant and agent, could not be made a trespasser *ab initio* by a subsequent omission of the commissioners to make and file such map and description. But the evidence was competent for the defendant, if he chose to give it. It is not for the plaintiff to object to evidence showing that every step has been taken which is made necessary to vest a perfect title to the *locus in quo* in the public, for the purposes of a road, notwithstanding evidence falling short of this might be sufficient for the defendant. It was sufficient that the map and description was signed by two of the commissioners. 1. It was expressly authorized by the act to be signed by the commissioners, or a majority of them. (*Laws of* 1846, *p.* 305, § 7.) 2. The presumption is that all assented to it, or that all were consulted, and conferred upon the subject, which would authorize a majority to act. (*Doughty* v. *Hope,* 3 *Denio,* 249. *Id.* 594. 8 *Wend.* 555.) Evidence of the declarations of Bellinger and Barckley, two of the commissioners, made after the alledged trespass, was properly excluded. They were competent witnesses if living ; but if not, their declarations made after the transaction were no more than the declarations of any other persons would have been. The evidence would have been strictly hearsay testimony, and as such was properly excluded. (*Greenl. Ev.* §§ 99, 100, 123, 124.) The provisions of the re-

vised statutes requiring commissioners of highways in certain cases to give the owner or occupant of the land through which a road shall have been laid, sixty days' notice in writing to remove his fences, is not made applicable to the proceedings of the commissioners under the act in question. Their powers are defined by, and directions for their conduct given in, the act under which the proceedings were had.

It is now well settled that the law under which the defendant justifies, not making the assessment and payment of damages a condition precedent to an entry upon and occupation of the premises for the purposes of the road, it is sufficient that the act makes provision for compensation to the owner, and the assessment and payment need not precede such entry and occupation. (*Bloodgood* v. *Mohawk and Hud. R. R. Co.* 18 *Wend.* 9. *S. C.* 14 *Id.* 51. *Calking* v. *Baldwin,* 4 *Id.* 667. *Cole* v. *Trustees of Williamsburgh,* 10 *Id.* 659. *People* v. *Hayden,* 6 *Hill,* 359.) The owner of the premises may call upon the commissioners to assess and pay the damages as soon as the alteration is determined upon and the appropriation made ; and if they refuse to make the assessment and payment they may be coerced, or perhaps they may be restrained from proceeding with the alteration until the damages shall be assessed and paid. But it is not necessary to decide this question. It is sufficient for this case that by the settled construction of the constitution which prohibits private property to be taken for public use without just compensation, actual compensation need not precede the appropriation, and that the law authorizing the reconstruction and alteration of the road in question provides for compensation, but does not make it a condition precedent to the entry upon and appropriation of premises for the purposes of the road.

I have thus gone through, at some length, the points made upon the trial, and upon which the plaintiff now relies. Some of them are unimportant, while others present questions worthy of consideration. Upon a careful review of the whole case, I think the rulings and decisions upon the trial, and the final disposition of the case, were right. 1. The act under which the defendant justified was properly in evidence. 2. It was consti-

tutional; for although it authorized the taking of private property for public purposes, it provided for a just compensation to the owner; and the assessment and payment of such compensation did not necessarily precede the entry upon and appropriation of the premises.   3. The premises in question were embraced within the provisions of the act, and the bill did not require the assent of two thirds of the members of the legislature, as a bill creating, altering or renewing a body politic or corporate.   4. The evidence established the fact that all the commissioners named in the act conferred together upon the subject matter of the alterations in question, and assented to them, and ordered and directed the alteration to be made; and that the defendant acted under their instructions, and by their directions. These are the principal questions presented by the bill of exceptions; and if I am right in my conclusions, the justification of the defendant was fully established.   The other questions are unimportant; although as to them I think no error was committed upon the trial.

A new trial is denied.

