Sarah A. Wood, administratrix of Julia A. King, deceased, Appellant, v. Erastus B. Phillips, Respondent.

One tenant in common has a right to take peaceable possession of the premises owned in common; and although such possession is acquired by stealth, yet, if without tumult or a breach of the peace, it will not be illegal.

One tenant in common has no right to oust or debar his co-tenants from joint possession with him; but if such co-tenants, after overcoming such attempt to oust them, and regaining possession, lay hands upon their co-tenant and remove him by force from the common property, they are liable for an assault and battery.

The statute of forcible entry and detainer was originally strictly a criminal proceeding; and though it has been subsequently enlarged so as to embrace to a certain extent a civil remedy, the form of proceeding and the rules of law which govern it remain to a great degree unchanged.

(Cause argued December 2d, 1870; and decided December 13th, 1870.

Appeal from an order of the General Term of the Supreme Court, in the fifth judicial district, granting a new trial on a verdict and exceptions directed to be heard in the first instance at the General Term.

This action was brought for an assault and battery alleged to have been committed by the defendants upon the plaintiff.

In 1803, Thadeus M. Wood and George Hall, deeded certain lands on Onondaga Hill to the supervisors of Onondaga county and their successors in office, so long as they should continue to use them for court-house purposes, and with a condition that when they should cease and neglect to use and occupy the same for such public purposes, the land should revert to said Wood and Hall and their heirs forever.

In 1829 the county ceased to use the lands for court-house purposes. Some years after this, the citizens of Onondaga Hill commenced using the clerk's office erected on said land for a school-house. The clerk's office was consumed by fire, and in the year 1847 the school district erected a school-house on said land and occupied it for a common school.

Thadeus M. Wood died in 1836, and George Hall some years since; said Wood leaving eight children including Mrs. King, the plaintiff, and said Hall leaving four children.

In the year 1865, the supervisors of the county by resolution abandoned all claim to the land in question. Soon thereafter Mrs. King, having acquired by deed some additional interest of one or more of the heirs of Thadeus M. Wood, commenced an action of ejectment against the trustees of school district No. 6, to recover the possession of said land. The action was first tried before Hon. LEROY MORGAN, and a judgment was obtained by Mrs. King; a second trial was had with the same result. Shortly after this, the trustees held a meeting, and by resolution abandoned the land in question as a site for a school-house. Some negotiations were then had between the trustees and Mrs. King, by which the trustees were permitted to remain in possession for the time being. Between this and the 1st of April, 1867, the trustees obtained an act of the legislature legalizing the then location of the school-house and confirming the same, and authorizing the trustees to acquire title to the land on which it stood. They then purchased from George Hall, one of the heirs, his interest in the premises. Having obtained this interest the trustees then claimed to be tenants in common with Mrs. King and the other claimants; and on demand, made by her in her own behalf, and all the other heirs of Wood, the trustees refused to give her possession, claiming to occupy as tenants in common with her.

After this refusal Mrs. King, on the morning of May 13, 1867, when the school-house was locked up and unoccupied, got in through the window, took off the locks and put them on so as to fasten the doors on the inside. She then commenced to occupy it, stayed there through the day, took her meals there and received her friends there. The trustees, on the evening of the same day on which Mrs. King had taken possession of the school-house, went to the school-house, broke open the door forcibly, and Mrs. King refusing to leave the

premises, two of the trustees, one of whom was the defendant, who took hold of her and put her out.

Mrs. King commenced this action for assault and battery, and obtained a verdict at the circuit for fifty dollars. Exceptions were taken, and were ordered to be heard in the first instance at the General Term, where a new trial was granted

This appeal was taken from the order of the General Term granting a new trial. The plaintiff has been substituted in place of Mrs. King, who died *pendente lite.*

*S. D. Dillaye,* for the appellant, that Mrs. King had legal right of possession, cited *Taunton* v. *Costar* (Tenn. R., 431); *Turner* v. *Meymott* (1 Bingham, 158); *Butcher* v. *Butcher* (7 B. & Cress., 499); *Edwin* v. *Olmstead* (7 Cowen, 329); *Wilde* v. *Cautillon* (1 Johns. Case, 123); *Hyatt* v. *Wood* (4 John., 150); *Parsons* v. *Brown* (15 Barb., 590); *Sager* v. *Harpending* (49 Barb., 175). That she had right to take possession and maintain it, he cited *Withard* v. *Cothcut* (4 Mann. & Granger, 573); *Murray* v. *Hale* (7 Com. Bench, 455); Coke on Littleton, 321, 322, 323; 2 Blackstone Com., 186; 4 Kent, 368: *Wait* v. *Richardson* (33 Vermont, 194); *Edwin* v. *Olmstead* (7 Cowen, 239). That trespass will lie when there is an ouster, 33 Vermont, 191; *Booth* v. *Adams* (11 Vermont, 156); *Munford* v. *Brown* (1 Wend., 52); *Fairdaw* v. *Thackleton* (5 Burrows, 2607, 2608). He also, cited *Catloris* v. *Cowper* (4 Taunt., 547); *Hyatt* v. *Wood* (4 John., 150); *Parsons* v. *Brown* (15 Barb., 590); *Sage* v. *Harpending* (49 Barb., 175); 1 Bing., 158; 9 Durnford & East, 431; 18 John., 350; 9 Wend., 36; 13 John., 444; 17 Wend., 437; 7 Wend., 181; 6 Howard, 437.

*D. Pratt,* of counsel for respondent.

FOLGER, J. The following appears to have been the relations of the parties to each other, and to the disputed premises, at the time of the transaction, which is the alleged cause of action in this case. By force of a valid adjudication upon her rights, the plaintiff was the owner in

fee at that time of an undivided interest in them, and was, of course, a tenant in common with other owners. We may ascertain the legal position of the defendant with certainty sufficient for the purposes of this case, without passing upon the right of the legislature, to confer power upon the trustees of school districts, to take private property without the consent of the owner; for it does not appear that the trustees of this school district, of whom the defendant was one, or their predecessors in office, had undertaken to exercise any powers under the act of 1866. (Laws of 1866, chap. 800, p. 1749.) The act of 1867 (Laws of 1867, chap. 391, p. 935) legalized and confirmed the action of the trustees, in locating the site of the school-house of the district upon these premises. It also authorized them to acquire title to land enough for the purposes of the district, in accordance with the act of 1866. It cannot be said, however, as is claimed by the respondent's counsel, that the act of 1867, of itself, without further action on the part of the trustees, appropriated the premises to public use, and made provision for compensation to the private owners. It was not a substitute for the purposes of this district, in place of the act of 1866, nor did it dispense with the necessity, if any existed, for taking the legal proceedings provided for by that act, nor did it in terms confer upon the trustees any title to the lands. By its terms, after ratifying the location of the school-house site, it did no more than to authorize the trustees to proceed under another law to acquire the title to that site. There was still need of some action on their part, by bargain with owners or by statutory proceedings, before they acquired title. It legalized the official determination of the trustees, that the site should be on these premises, and no more. The trustees obtained no more right in the premises than resulted from their own action. And, so far as appears from the papers, that action was confined to the taking of a deed from Hall and going into possession under it. By this deed they acquired the interest of Hall, which was an equal undivided eighth part of the premises. Thus the trustees were, at the

time of the transaction, also an owner, in their official capacity, of an undivided interest in the premises, and tenant in common with other owners. The defendant was one of the trustees, and is to be regarded in this transaction as acting in that capacity. Thus the title and rights of the plaintiff and of the defendant were of the same nature, differing slightly in extent. Both had title; both had right to actual possession. Neither had the right to oust or debar the other from actual possession. (*Erwin* v. *Olmstead*, 7 Cow., 229.) Indeed, the possession of one tenant in common is presumed to be in support of the common title of all (*Jackson ex dem.* v. *Tibbetts*, 9 Cow., 241–52).; though such presumption may be repelled, and the tenant in common, in actual possession, may deny the right of possession of his co-tenant, and so work an ouster. (Id.)

Such were the relations to each other, and to these lands, of the plaintiff, and the defendant as one of the trustees of the school district. And the trustees were at the time in the actual possession of the premises, and claimed the right of possession to the exclusion of the plaintiff. She had the right of possession, and had the right to acquire it in a peaceable manner. (*Hyatt* v. *Wood* 4 J. R., 150–8). She did acquire possession; by stealth, it is true, but it was without tumult, or a breach of the peace, and in a peaceable manner, in a way which the law has justified. (Id.; *McDougall* v. *Sitcher*, 1 J. R., 42; 2 Archbold Cr. Pr. and Pl., 337, 7th Am. ed.) And having obtained the possession, she had the right to retain it, so long as her relations to the premises remained unchanged. And though she had no right to debar other tenants in common from a joint possession with her; on the other hand they had no right to oust her from her possession by force, even though she claimed the exclusive possession, and undertook to enforce it. The most that they could do, was peaceably to acquire possession for themselves jointly with her. When they should go farther, and undertake by force, without legal proceedings to that end, to remove her from possession, they would find no justification in the law.

We have not disregarded the authorities to which we have been cited by the respondent's counsel. One class of them, such as *Brown* v. *Dawson* (12 Ad. and Ell., 624), is to the effect, that one who has no legal right to possession, cannot by force, or surreptitiously, acquire possession, and then set it up as a *prima facie* right, against the owner upon whose possession he has thus entered. It is manifest that these do not apply in this case. For here is a legal title and right of possession, and a right to take it in an orderly manner. The taking of possession peaceably is lawful, for it is but the completion or fruition of the pre-existing right. The defendant was in actual possession. His possession was lawful, for he was a tenant in common of the lands. But his exclusion of the plaintiff was unlawful, for she was by right, also a tenant in common of the lands, and equally entitled to an actual joint possession of them. If she could not acquire that possession without force, then she must resort to the law, and ask its aid in some appropriate mode. If without force, in an orderly and peaceable manner, she could unite actual possession with her legal title, she was justified in doing it. That she had the legal right to an immediate and actual possession, and in pursuance of that right took possession, is the fact which distinguishes this case from the class of the cases cited by counsel for the respondent, to which we now allude. Another class of cases cited to us, such as *The People* v. *Leonard* (11 J. R., 504), are cases of forcible entry and detainer, and of proceedings under the statute relative thereto. And it is to be observed of decisions in those cases, that they are not in all respects strictly applicable to the case of an issue solely as to private rights. The proceedings under the statute in earlier days were in their nature criminal, for the redress of the wrong to the public done by a breach of its peace. The statute was not intended to confer rights. The main object still is to preserve the public peace and prevent parties from asserting their rights by force or violence, though by gradual additions the remedy has become in effect a private as well as a public

one.   But the form of proceeding and the rules of law which
govern it remain to a great degree unchanged.   Still, there
must be present, to secure conviction, proof of a wrong done
to the public.   A mere trespass will not sustain the proceed-
ing.   There must be, in the acts of him who is complained of,
an element of force, or violence, or terror to others.   (*Porter*
v. *The People*, 7 How., 441–5 ; *The People* v. *Van Nostrand*,
9 Wend., 50–2; *Hyatt* v. *Wood, supra ; Commonwealth* v
*The Keeper*, 1 Ashmead, 140–5–6.)   For though the owner
of land may be proceeded against for an entry upon his own
premises, if effected with unlawful force, (*Jackson* v. *Morse*, 16
J. R., 197–200–1), yet he may expel from them one who is
in possession without right or title, and an action of trespass
will not lie. (*Estes* v. *Kelly*, 8 Wend., 555–60.)   Now, we have
already stated that the entry of the plaintiff was, in the eye
of the law, an orderly one.   Those authorities, then, which
hold that proceedings for forcible entry and detainer will lie
against one, though he be the legal owner, come short of
upholding the position, that the plaintiff, being the legal
owner, and having the right of possession, had not the right
by her own act to acquire possession in an orderly and peace-
able way.   (See *Willard* v. *Warren*, 17 Wend., 257.)   It
must be borne in mind that the issue here was not between
the plaintiff and the people, whether she had made a breach
of the peace; nor was it whether the defendant had not right
of possession, which, being shut out from, he might regain.
It was whether he was justified in forcibly removing from
the premises the person of the plaintiff.   That he had a right
to regain his own possession, did not afford him that justifica-
tion.   For having gained that, he went further, and ejected
her from her rightful possession by force applied to her per-
son.   This was unlawful in him, and he was answerable to
her for her damages.   The verdict of the jury was sustained
by the law and evidence.

On the trial of this cause at the circuit, the defendant
offered proof that the site of the school-house was part of a
common dedicated to the public before the year 1799, and as

such used and occupied by the public ever since. The court refused to receive the proof, and the defendant excepted. It appears to us from the printed case, that this question was *res adjudicata* between the parties. The plaintiff had already put in evidence a judgment roll, showing a verdict of a jury and a judgment entered thereon 8th August, 1867, in her favor, in an action in which she herself was plaintiff and the trustees were defendants, in which one of the defences set up was the alleged fact of this dedication. This question appears to have been passed upon in that action and adjudged adversely to the defendant, and that adjudication has not been reversed or set aside.

The order of the General Term, granting a new trial, should be reversed and judgment absolute for the appellant with costs.

All the judges concurring for reversal, order reversed and judgment absolute for the plaintiff.