THE HUDSON IRON COMPANY, Appellants, *v.* CHARLES C. ALGER, Respondent.

Prior to the passage of the act of congress of June 30, 1864 (13 U. S. Stat. at Large, 270), which provides (§ 97) that whoever shall have made any contract prior to its passage for the delivery of manufactured articles, is authorized to add to the price so much money as will be equivalent to any duty subsequently imposed on said articles, and not previously paid by the vendee, and shall be entitled to sue for and recover the same; defendant agreed to sell and deliver to plaintiff 36,667 tons of iron ore, for which plaintiff agreed to pay him in pig-iron at the rate of one ton of pig iron for eight tons of ore. In an action brought to recover the duty of two dollars per ton imposed by section 94 of said act, and paid by plaintiff upon the iron delivered under said contract, *held*, that the contract was within the spirit, purview and letter of the act; that the word "price" was there used, not as denoting a sale for money simply, but in the sense of "value" or "compensation," without regard to the form in which it was received; that as to the pig iron the agreement was in effect a sale thereof by plaintiff to defendant, and the word "vendee" was applicable to the latter, the same as if he had paid therefor in money.

Also *held*, that section 87 of said act, which expressly provides in the case of tobacco, that where the material is furnished or sold by one party under an agreement that the manufactured article should be received in payment, the duty, when paid by the manufacturer, may be collected of the other party, furnished no inference against the construction above given, as section 87 provides for a case not embraced in

section 97, it authorizing such collection in the particular case specified, whether the contract was made before or after the passage of the act.

(Argued March 15, 1873; decided June term, 1873.)

Appeal from judgment of the General Term of the Supreme Court in the third judicial district, in favor of defendant, entered upon a case submitted under section 372 of the Code.

This action was brought under the revenue act of 1864, to recover duties imposed by section 94 of said act, upon a quantity of pig-iron alleged to have been contracted to defendant before the passage of the act, and to have been delivered thereafter.

The facts presented by the case appear sufficiently in the opinion.

*Geo. W. Miller* for the appellant.

*J. B. Brinsmade* for the respondent.

Earl, C. The following are the material facts agreed on: On the 31st day of December, 1863, the parties entered into an agreement by which, among other things, Mr. Alger agreed to sell and deliver 36,667 tons of iron ore, between April 1, 1864, and December 1, 1867, to the Hudson Iron Company, for which it agreed to pay him in pig-iron, at the rate of one ton of pig-iron for every eight tons of ore delivered.

On the 30th of June, 1864, Congress passed an act by which, among other things, it was provided that upon pig-iron which should be produced and sold or manufactured, or made and sold, or removed for consumption or for delivery to others than the agents of the manufacturer or producer, there should be levied, collected and paid a duty of two dollars per ton, to be paid by the producer or manufacturer thereof. By section 97 of the same act it was provided that "every person, firm or corporation who shall have made any contract prior to the passage of this act, and without other provision therein for the payment of duties imposed by law enacted subsequently thereto, upon articles to be delivered under such con-

tract, is hereby authorized and empowered to add to the price thereof so much money as will be equivalent to the duty so subsequently imposed on said articles and not previously paid by the vendee, and shall be entitled by virtue hereof to be paid and to sue for and recover the same accordingly." The plaintiff paid $2,501.69, duty imposed by section 94, and now seeks to recover it under section 97; and the sole question for our consideration is, whether the case comes within this latter section.

In construing any statute the intention of the law makers must be sought for. That is the grand central light in which all statutes must be read. The intention, however, is to be sought for in the language used. But, for the purpose of understanding the language, the objects the law makers had in view and the motives which moved them to enact the law may be considered. It is a rule in political economy that the price of articles manufactured for sale depends largely, if not mainly, on the cost of producing them. In the first instance, articles will not be manufactured for sale unless they can be sold for at least their cost. In process of time, however, more of the manufactured article may be in market than the exigencies of trade and commerce demand, and then for a time the price may fall below the cost of production. The manufacture of the article will then diminish or cease for a time until the demand shall be at least equal to the supply, and then the price will again be at least the cost of production, and may largely exceed it in case the demand largely exceeds the supply. So that it is true that for no considerable time will the price in market of any article manufactured for sale fall below the cost of its production. This general rule was undoubtedly in the view of the law makers when they enacted section 97. By section 94 the tax was imposed upon articles to be manufactured, and the cost of producing such articles was increased just the amount of the tax, and were it not for section 97 the whole of this extra cost would be lost to the manufacturer when the compensation for the article had been fixed prior to the

passage of the act; and not only this, the purchaser, in a healthy, normal state of the market, would mostly gain what the manufacturer would lose, as he could obtain for the article at least the entire cost of its production with the tax added. This might not in any given case be true, as the market might be glutted with the article and the supply be largely in excess of the demand; and besides, the increased price of the article would have a tendency to diminish the demand. But still, generally, he might be expected to sell the article for a price enhanced to nearly if not quite the full amount of the tax. Hence, it was manifestly unjust that this tax in such cases should rest upon the manufacturer, and section 97 was enacted to ultimately place the tax where it more properly belonged, and to impose the burden upon the one who could more justly bear it.

It is thus seen that this case is clearly and precisely within the spirit and purview of the act, and it only remains to be inquired whether it is not also fairly within its letter. Here is a contract made prior to the passage of the act, for articles to be subsequently delivered under the contract, without any provision for the payment of the duties; and so far, it is clearly embraced within the language of the statute. But it is said, that as no moneyed price was agreed upon for the pig-iron, there is no price to which the amount of the duty can be added, and hence, that it cannot be collected.

Suppose a moneyed price has been paid for a manufactured article coming within sections 94 and 97, it would be quite absurd to claim that an action for the amount of the duty could not be maintained by the vendor, distinctly, to recover it. While the statute says that the amount of the duty may be added to the price, it does not mean that the process of addition must take place and that the vendor shall fail to recover the duty unless he at the same time has a cause of action for the whole or a portion of the price.

The object of the statute is to cast the burden of the duty upon the vendee by adding it to the compensation which he is to pay. It is said further, that the words "price" and

"vendee," used in the statute, imply a sale for money. It is true that "price" generally means the sum of money which an article is sold for; but this is simply because property is generally sold for money, not because the word has necessarily such a restricted meaning. Among writers on political economy, who uses terms with philosophical accuracy, the word price is not always or even generally used as denoting the moneyed equivalent of property sold. They generally treat and regard price as the equivalent or compensation, in whatever form received, for property sold. The Latin word from which price is derived, sometimes means "reward," "value," "estimation," "equivalent," and Webster shows that it is sometimes used in the same sense; and I cannot doubt that it was used in this statute in the sense of "value," or "compensation."

There is just as much reason for applying the rule of the statute to this case as to one where the sale was for a moneyed price; and it is right to assume that Congress meant to apply the rule to every case wholly within the reason of the rule, unless the language used clearly forbids it. To use such language in a statute as by no possible construction to leave out any case intended to be embraced in it, would require too much detail and too great prolixity. Hence general language is used in statutes, and in cases of doubt the intention of the law makers must be arrived at by considering the circumstances under which the statute was enacted, and the objects for which it was enacted, and, by a resort to all those other lights which the canons of construction sanction as proper helps.

It is also claimed that the word "vendee," used in the statute, shows that a sale and not an exchange of commodities was contemplated. Suppose one sells a farm for three thousand bushels of wheat, may not one be called, without an abuse of terms, the vendor and the other the vendee, and the wheat the price of the farm? In this very contract between these parties, the defendant agrees to sell the iron ore and the plaintiff to pay therefor in pig-

iron. And so the plaintiff may be said to have agreed to sell pig-iron and take his pay in iron ore. In 3 *Salk.* (157), it is said that " in exchanging property both parties are buyers and sellers."

It is further claimed, that section 89, which provides, in the case of tobacco, that when the material is furnished by one party and manufactured by another, or when the material is furnished or sold by one party with an understanding or contract with another that the manufactured article is to be received in payment therefor, the duty, when paid by the manufacturer,' may be collected by him of the other party, furnishes an inference against the construction which I have given to section 97. I do not think so. This is one of several provisions in which great and unusual care is taken to secure the large duties imposed upon tobacco. This section provides for a case not embraced in section 97. It authorizes the manufacturer to collect the duty of the other party in all cases, whether the contract was made before or after the passage of the act.

I am therefore of the opinion that the learned judges at General Term erred in the construction of the statutes, and the judgment must be reversed and judgment ordered for the plaintiff for $2,501.69, with interest from February 17, 1865, and costs.

All concur; Reynolds, C., not sitting.

Judgment accordingly.