Lawrence, J.
It was evidently the intention of the parties that the defendants should pay an annual license fee to the plaintiffs-for each car which might be run upon the. Third avenue, under the resolution passed by the common council December 18, 1852, which resolution became bind-
ing and operative on the 31st of December, 1852. The third resolution provides:
“That in consideration of the good and faithful performance of the conditions, stipulations and agreements above prescribed, and of such other necessary requirements as may hereafter be made by the common council for the regulation of the said railroad, the said parties shall pay from the date of the opening the said railroad the annual license fee for each car now allowed by law, and shall have licenses accordingly.”
It must be assumed from the resolutions that both parties regarded the law as having at that time fixed a license fee, and under well settled principles in the construction of statutes we must, in the first instance, endeavor to find out from the language employed to what license fee the parties referred. Hudson Iron Co. v. Alger, 54 N. Y., 175; Matter of N. Y. and Brooklyn Bridge, 72 id., 528.
And if there is any doubt as to the meaning of the language employed, that doubt can be solved by resort to extrinsic circumstances. Smith v. Helmer, 7 Barb., 421; People v. Schoonmaker, 53 id., 45; McCluskey v. Cromwell, 11 N. Y., 601; Mohawk Bridge Co. v. Utica R. R., 6 Paige, 561; U. S. v. Breed, 1 Sumner, 159; Haydon’s Case, 3 Coke, 7 B.; Dovenshire v. Lodge, 7 B. & C., 39.
Evidence ivas introduced upon the trial, on the part of the defendants, for the purpose of showing that at the time the resolution in question was passed there were no license fees paid to the city for such street railroad cars as were then running.
Prior to 1851 the only street railroad cars were those of the Harlem or Fourth Avenue Railroad Company.
In 1851, on July 30th, the mayor signed the resolution, which had theretofore been passed by the common council, granting to the parties in said resolution named permission to lay railroad tracks and run cars upon the routes now known as the Sixth and Eighth Avenue lines.
In the resolution in regard to each of these routes it was provided “that each of said passenger cars to be used on said roads shall be annually licensed by the mayor, and there shall be paid annually for such license such sum as *183 the common council may hereafter determine. Valentine’s Railroad Grants, 253-275.
In resolutions in respect to a railroad in Broadway, which never. became operative in consequence of the decision of the court of appeals in the case of Milhau v. Sharp (14 N. Y., 506), and because the powers granted by those resolutions were not confirmed by the legislature in the act of April 4, 1854, no portion of the road having been constructed, the grantees were to pay for ten years the annual license fee for each car now allowed by law, and after that such amount of license fee for further licenses as the corporation, with the permission of the legislature, shall then prescribe. Valentine’s Railroad Grants, 246.
In the Second Avenue Railroad resolution no provision as to license fees is contained. See Valentine’s Railroad Grants, 173.
The resolutions above referred to appear to have been the only ones in force relating to street railways, which were passed prior to the adoption of the resolution relating to the Third Avenue Railroad, under which this action was brought.
It would thus appear that although both parties to the grant intended that an annual license fee should be paid by each car, and supposed that such fee had been fixed by law, there was in point of fact, at the time of the grant, no provision of law regulating specifically the license fees to be paid by the street cars.
Are we not, then, under the decisions above referred to, authorized and obliged to look at extrinsic circumstances,in order to ascertain what was the annual license fee which was in contemplation by the parties to the grant ? I think that such must be the result of a full consideration of this subject. It is well settled that any ambiguities in a grant of privileges must operate against the grantees and in favor of the public. See Gildart v. Gladstone (11 East., 685); Stourbridge Canal Co. v. Wheeley (2 B. &. Ad., 792); Fertilizing Co. v. Hyde Park (97 U. S., 659); Newtown v. The Commissioners (100 id., 561); Hartford Bridge Co. v. Union F. Co. (29 Conn., 210); Langdon v. The Mayor, etc. (93 N. Y., 129); Auburn & Cato Pl'k R. v. Douglass (9 id., 448); and other cases cited in the brief of the corporation counsel.
Now, it appears from the testimony in the case, that at the time of the passage of the resolution under consideration, there were stages or omnibuses which were engaged in the transportation of passengers for compensation, between points which corresponded very nearly with the route described in the resolutions. It also appears that those routes were definite and distinct, and that those vehicles each paid an annual license fee to the plaintiffs, under an *184 ordinance which had been in force since 1839. (See Revised Ordinances of 1845, p. 470.) That ordinance provided that for every accommodation coach or stage, or stage coach, which a person was authorized by the mayor to keep; there should be paid, when the same were drawn by four horses, the sum of thirty dollars, and twenty dollars when drawn by two horses, and a half of those prices respectively, when the tire of any accommodation coach or carriage authorized by the act should be the width of four inches or upward. I am of the opinion that it was the license fee provided for by this ordinance which the city and its grantees liad reference, when the one granted and the other accepted the franchises and privileges conferred by the resolutions.
Criticism was made on the trial and in the brief subsequently filed by the learned-counsel for the defendants upon the fact that street cars had never been designated, as stages or stage coaches, or accommodation coaches, or omnibuses in this city, but I do not regard that criticism as of force, for the -reason that such coaches or • stages are the only vehicles plying for hire which correspond, in the general features of their traffic and route, with the street cars; and also because, as already stated, both parties to the grant intended that the license fee should be paid, and then reference to such fee as being already established by law indicates to my mind that they meant the fee then paid by vehicles plying between fixed points and on definite routes for the transportation of passengers. Besides, we have authorities to the effect that street cars are either omnibuses or vehicles in the nature of omnibuses. The Frankfort and Phila. Pass. R’y Co. v. The City of Philadelphia (58 Pa. St. Rep., 119); see, also, Hoyt v. Sixth Avenue R. R. Co. (1 Daly, 535), in which Chief Justice Daly says that “A street railroad is a mere omnibus on rails.”
I do not regard the cases of Hegan v. Eighth Avenue R. R. Co. (15 N. Y., 380), and Whitaker v. Same (51 id., 295), as in conflict with the views above expressed. The latter case was brought to enforce a liability under a statute, which was quasi-penal in its character, and which altered the common law liability of the owners of stages for the acts of their employees. It was held that such act did not apply to street railway companies. Under plain principles of construction such a conclusion must necessarily have been reached, because such statutes are always strictly construed.
The case of Hegan v. The Eighth Avenue R. R. Co., supra, was decided upon the statute which declares that when persons travelling in carriages shall meet on a road or highway, they shall reasonably turn their carriages to the right of the centre of the road, so as to permit such car *185 riages to pass without interference or interruption. It seems quite obvious that such a statute was not applicable to street cars which run upon fixed tracks. Nor is there anything in the decision of the court of appeals, in Mayor, etc., v. Second Ave. R. R. Co. (32 N. Y., 261), which affects the position of the plaintiffs, because that decision proceeded upon the ground that as the resolutions of the common council, respecting the Second Avenue Railroad grant, reserved no right to impose an annual license fee, the subsequent imposition of such fee would be in violation of the contract and the derogation of the grantee’s rights thereunder.
The case of Mayor, etc., v. The Third Ave. R. R. Co. (33 N. Y., 42), involved the construction of the same ordinance as was considered in the case in the 32 N. Y., but it will be seen by referring to the opinion of Judge Porter, that the court were of the opinion that the ordinance of 1858 imposed a license fee beyond that which was reserved by the stipulation in the contract between the-parties. There is nothing in the case which intimates any opinion that, by the terms of the original contract or resolution, the city had no authority to impose any license whatever upon the grantees for the privileges of running their cars over the prescribed route.
As showing the construction which the company then placed upon the grant by the common council, the corporation counsel refers to the points made by its counsel on the argument in the court of appeals, in which it is stated that, the fee required to be paid under the grant was twenty dollars for each car, and that to hold that after the city had contracted to give a license for twenty dollars, it had, by virtue of its legislative power the right to impose a license of fifty dollars, would be to allow its right to impose one of $500, $5,000 or $500,000.
The ordinances in relation to hackney coaches and trucks, and carts have, in my opinion, no bearing upon the question involved here, because they related to vehicles having no fixed routes, and which were not likely to be displaced by the street cars.
It follows, if the views above expressed are correct, that the plaintiffs are entitled to judgment for such fees as are not barred by the statute of limitations, and under the decision in The Mayor, etc., v. The Broadway and Seventh Ave. R. R. Co. (97 N. Y., 284), interest should be allowed.
The parties may appear before me, in special term, part II, on any day next week, except Saturday, for the purpose of' adjusting the amount for which a verdict shall be directed to be entered under the stipulation made upon the trial