55 409
123a 635

# THE PEOPLE OF THE STATE OF NEW YORK, RESPONDENT, *v.* THE NEW YORK, NEW HAVEN AND HARTFORD RAILROAD COMPANY, APPELLANT.

*.Police powers — right of the legislature to prescribe the method of heating cars — the acts relating thereto cover railroads of fifty miles, although having less than that number in this State.*

'The provisions of chapter 616 of the Laws of 1887, as amended by chapter 189 of the Laws of 1888, which, by the terms of. the act, do "not apply to railroads less than fifty miles in length," cover a railroad company in this State having fifty miles and upwards of road in use, although fifty miles of such road are not within the limits of this State.

A railroad corporation which owns and uses the territory of this State for the purpose of traffic, thereby subjects itself to the laws of this State and to its police regulations.

Under the police powers vested in the legislature it has authority to prescribe the method of heating passenger cars upon any steam railroad doing business within the State.

APPEAL by the defendant from an interlocutory judgment, entered in the office of the clerk of the county of New York on the 5th day

of June, 1889, after a trial of the issues of law raised by a demurrer interposed to the complaint in this action.

*H. C. Robinson*, for the appellant.

*W. A. Poste*, for the respondent.

BRADY, J.:

This action was brought to recover penalties to the amount of $7,000, for alleged violations of the provisions of chapter 616 of the Laws of 1887, as amended by chapter 189 of the Laws of 1888. The defendant is a corporation organized and existing under the laws of the State of Connecticut. By an act of our legislature the company was authorized to extend its line to the city of New York, and has run its cars for many years into the city over the tracks of the New York and Harlem Railroad Company, and its passenger trains run over twenty-six miles of railroad in this State. The Acts of which violation is complained relate principally to the heating of steam passenger cars, and declare that :

" It shall not be lawful for any steam railroad doing business in this State, after the first day of November, eighteen hundred and eighty-eight, to heat its passenger cars, on other than mixed trains, by any stove or furnace kept inside the car or suspended therefrom, except it may be lawful, in case of accident or other emergency, to temporarily use such stove or furnace with necessary fuel. Provided, that in cars which have been equipped with apparatus to heat by steam, hot water or hot air from the locomotive, or from a special car, the present stove may be retained to be used only when the car is standing still. And provided, also, that this act shall not apply to railroads less than fifty miles in length, nor to the use of stoves of a pattern and kind to be approved by the railroad commissioners, for cooking purposes in dining-room cars."

And by the amendment of 1888 it was provided that :

" In special cases, the board of railroad commissioners may extend the time for a period not exceeding one year from November first, eighteen hundred and eighty-eight, for any steam railroad doing business in this State, to heat its passenger cars by any stove or furnace kept inside the car or suspended therefrom.

" § 3. This act shall take effect immediately."

The defendant failed and refused to comply with the statute, and

after the 1st day of November, 1888, heated, and continues to heat, its passenger cars run daily as aforesaid on said railroad, both on through trains and over that part thereof lying within the State of New York on other than mixed trains, by stoves and furnaces kept within said cars, as the regular and usual method of heating said cars, and in cases other than those of accident and other emergency.

And it appears that the railroad commissioners have not extended the time of the defendant to heat its passenger cars by stoves or furnaces. The complaint contains all the necessary allegations to present the claim urged against the defendant, namely, the penalties incurred by the alleged violations of the statute. The defendant demurred upon the ground that it appeared upon the face of the complaint that it did not state facts sufficient to constitute a cause of action. The defendant, in maintenance of the demurrer, insisted that the act was not intended to apply to cars on railroad lines without the State, and that it would be unjust to compel the defendant to comply with its provisions for the reason that a construction was not to be given to a statute which would lead to unjust or inequitable results, and, further, that the defendant was an interstate railroad, and if the construction of the act was doubtful, it was to be construed in its favor. The defendant, as is the wont of similar organizations, struggled with great zeal to avoid the alleged responsibility, but without success. The various propositions mentioned, although ably presented on defendants' behalf, were overruled at Special Term, and from that decision this appeal was taken.

It is hardly necessary to say that the statutes under consideration were enacted in order to decrease the number of accidents resulting in the destruction of human life which had occurred under the system of car heating by stoves and furnaces, and which was justly condemned by public opinion. Indeed, it may be said that a substitute of some kind insuring greater safety was imperatively demanded. It is not necessary to cite authorities to show that evils theretofore existing may be recalled and employed as factors in the effort to determine the intent of particular legislation; and if it be obviously directed against such evils, it is fairly to be presumed that the remedy provided was designed to overcome them. (See *People ex rel. Peake* v. *Supervisors,* 43 N. Y., 132 ; *Ayers* v. *Lawrence,* 59

id., 195 ; *Hudson Iron Co.* v. *Alger*, 54 id., 175.) Nor can there be any question about the right of the legislature to exercise its police power especially where it relates to the preservation of life. As was said by the United States Supreme Court (*Slaughter-house Cases*, 16 Wall, 62) : " This (police) power is, and must be from its very nature, incapable of any very exact definition or limitation. Upon it depends the security of social order, the life and health of the citizen, the comfort of an existence in a thickly-settled community." And the court cites, with approval, the case of *Thorpe* v. *Rutland and Bennington Railroad* (27 Vt., 149), which declared : " This police power of the State extends to the protection of the lives, limbs, health, comfort and quiet of all persons, and the protection of all property within the State."

And this police power gives a perfect right to the legislature to impose restraints and burdens upon persons and property in order to secure the general comfort, health and prosperity of the state and its citizens, no question about it ever was, or, upon acknowledged general principles, ever can be made, so far as natural persons are concerned. (*Thorpe* v. *R. and B. R. R. Co.*, 27 Vt. 149.)

Indeed, all property is held, subject to the general police power of the State to regulate and control its use, to secure the general safety and the public welfare. (*Bertholf* v. *O'Reilly*, 74 N. Y., 509 ; *Munn* v. *Illinois*, 94 U. S., 113.) Having arrived at these conclusions, the only question for consideration is, what was intended by the legislature in naming the limit of fifty miles as contained in the statute. It is justly observed by plaintiff's counsel that a road fifty miles in length seldom, if ever, had a sleeping car attached to its trains. He says : " The terror that has been felt for the car stove is usually associated with the sleeping car, or with long trains of passenger coaches. On short lines, used only for local traffic, there are no long trains of coaches to be telescoped into each other.

The reasons are most abundant, however, in favor of the intention of the legislature to embrace within its acts all cars used by railroad companies in this state having fifty miles and upwards of road in use although not all within its limits. A reference to the statute itself seems to be conclusive upon that subject. Section 1 provides expressly that " it shall not be lawful for *any steam railroad* doing business in this state," etc.

It is impossible for the defendant to escape from the truth and effect of the statement that it is doing business in this state. It has stations here from which its trains start and to which they return, and it is absolutely necessary, in order to accomplish the object of its present business, as declared, that its trains should go through a part of the state in order to carry persons to their destination out of the state, and beyond fifty miles, who take their places in its coaches in the city of New York. And it was the intention of the legislature that these persons, especially if residents of the state, who leave it through the instrumentality of defendant's cars, should be afforded the protection which is given to all other passengers traveling within the state, by compelling the use of a heating apparatus other than stoves and furnaces, no matter what the distance may be, provided it extend beyond fifty miles. It was thus designed to require the security of the passenger, his greater safety, to exist at the start, and thus establish a protective system which might not otherwise be adopted. The language of the act to which attention has been called is, therefore, very emphatic, very comprehensive, and very conclusive — " it shall not be lawful for any steam railroad doing business in this state," etc.

The defendant does business in this State as already suggested. Its business, starting from another State, is to reach its depot here and land its passengers, for which service it receives compensation, and also to receive passengers at its station here to be carried beyond the State line, and for a compensation proportioned, no doubt, to the distance its trains travel over the area of our state.

It seems unreasonable to argue that a person resident in this State, who becomes a passenger on one of defendant's trains to go to a point beyond its limits, should not have his safety secured, as far as may be, by the enforcement of the statute considered. If the railroad corporation seeks to enter the State and uses its territory for the purpose of traffic it necessarily subjects itself to the laws of the State, and, therefore, if a road more than fifty miles in length, to the provision that when it starts it shall be in such a condition as our law requires. There can be no doubt that such a statute, expressive of such laws, should be liberally construed for the public good, and, more than that, the railroad company should cheerfully comply with its requirements. The defendant is doing business, it

must also be said, within this State only by permission of the State, and, of course, such business may be regulated in its operation within the State or driven from it by the act of sovereignty.

The acts considered are in their nature police regulations, and are not an infringement of interstate commerce or of the Federal Constitution. It is the exercise of a power intended to promote the safety and comfort of our citizens and traveling public. It is reasonable and salutary, tending to increase the passenger traffic over the defendant's road, and therefore, benefit it, and it embraces a subject as to which Congress had made no provision. There can be no doubt that in such a case the State may adopt the necessary measures by legislation. (See *Sherlock* v. *Alling*, 93 U. S., 99; *Smith* v. *Alabama*, 124 id., 465; *Nashville, etc., R. R. Co.* v. *Alabama*, 128 id., 96.)

It may be that this somewhat elaborate consideration of the subject is a waste of time, but the various propositions of the learned counsel of defendant, and respect for him, have rendered it necessary.

For these reasons the judgment should be affirmed, with costs.

VAN BRUNT, P. J., and DANIELS, J., concurred.

Judgment affirmed, with costs.