Susanne B. M. Haslam, as Administratrix, etc., of M. Brent Haslam, Deceased, Claimant, *v.* The State of New York, Defendant.

(Claim No. 22224.)

Susanne B. M. Haslam, Claimant, *v.* The State of New York, Defendant.

(Claim No. 22225.)

Court of Claims, April 30, 1938.

*Guy B. Moore,* for the claimants.

*John J. Bennett, Jr., Attorney-General* [*Paul Muscarella, Assistant Attorney-General,* of counsel], for the defendant.

Ackerson, Acting Judge.   On the 25th day of December, 1931, at about two-thirty A. M., Dr. M. Brent Haslam, who resided on Amherst street in the city of Buffalo, was driving his Buick automobile westerly on Kenmore avenue, which is partly in the city of Buffalo and partly in the town of Tonawanda, Erie county, N. Y. He was accompanied in the automobile by his wife, Susanne B. M. Haslam, the claimant above mentioned, and also Mr. and Mrs.

Charles Greer. While so traveling westerly on Kenmore avenue, Dr. Haslam and his party reached the place where the Erie railroad and the International railway cross Kenmore avenue at grade parallel to each other and only a few feet apart. In the center of Kenmore avenue and on each side of the tracks at this crossing the said railroad companies had installed and were then maintaining an automatic signal for the purpose of giving a warning sign to the traveling public when trains or trolley cars were approaching Kenmore avenue.

The signal consisted of an iron shaft ten and one-half feet high resting upon the concrete base, that is, the shaft is ten and one-half feet above the base, making it about twelve and one-half feet above the ground. On the standard, just above the concrete base, there was a metal frame about eight inches wide and two and one-half feet high, the bottom of which was six inches above the top of the base. The top of this frame was about three feet above the top of the base. That frame was made up of twelve reflectors, three units of a series of four each; they were either glass or a reflecting polished metal, and white in color, like silver. Above that reflector the shaft was painted black and white, in barber-pole fashion. The distance of that barber-pole effect, above this reflector, was about three feet, and, at a point six feet above the top of the base, there was a cross-arm and on the cross-arm there were lights about one foot in diameter with six-inch lenses and red in color. These lights were operated electrically, the circuit being closed when a train or trolley car was within the block. In other words, when the trains or trolley cars were approaching Kenmore avenue these red lights would flash on and off, and when trains or trolley cars were not passing then these red lights were not lighted. Above the lights just referred to was the common railroad crossing signal, saying " railroad crossing."

On the night in question, as Dr. Haslam came to this crossing he was in the middle of the street and his car collided head-on with the above-described signal located on the east side of the tracks. After the collision the car was in the middle of the street with its hood right up against the signal or standard. The bumper was right up against it and the car was standing there parallel with the lines of the street so that it was directly in front of the standard and was facing west.

As a result of this collision Dr. Haslam was instantly killed and this claimant, Susanne B. M. Haslam, was seriously injured. Thereafter these claims were filed to recover damages from the State for the death of Dr. Haslam by reason of this accident and for the injuries thereby inflicted on Mrs. Haslam.

The claimants proceed upon the theory that both Dr. and Mrs. Haslam were free from contributory negligence and that the State of New York was guilty of negligence in the premises because its Public Service Commission approved and authorized the construction of this signal there in the center of the street by the railroad companies.

It appears from the evidence in the case that the Public Service Commission of the State of New York, by an order made on December 3, 1925, provided for rules and regulations to govern the installation and maintenance of the kind of signal which had at the point in question been erected on Kenmore avenue and with which the Haslam car collided on the night in question.

It further appears that the Erie Railroad Company and the International Railway Company had submitted plans to the Public Service Commission in accordance with the foregoing regulations for the erection of signals above described in the center of Kenmore avenue at the point in question.

Thereafter and on the 24th day of January, 1929, the said Public Service Commission made an order approving said plans and which was in form and matter as follows: " Case No. 2457. Entitled in the matter of a uniform type of automatic warning signal to be used at highway .grade crossings of railroads of the State of New York. Application of Erie Railroad Company and International Railway Company, — Erie Railroad Company and International Railway Company having submitted a plan showing the proposed installation of the automatic horizontal flashing highway crossing signals in the center of the highway, at the crossing of its railroad and Kenmore avenue, in the City of Buffalo and Town of Tonawanda, New York, entitled as follows: Erie Railroad Company, Kenmore Avenue, City of Buffalo, and Town of Tonawanda, August 10th, 1926. And said plan having been examined and found satisfactory, it is ordered that the above entitled plan filed by the Erie Railroad Company and the International Railway Company be and hereby is approved and that permission is hereby granted to install the signals in the center of the highway."

It further appears that thereafter and on the 17th day of October, 1929, the Erie Railroad Company, in accordance with the plans so approved by the Public Service Commission, erected the signal in question in the center of Kenmore avenue with which the Haslam car collided on the date in question; that said signal was erected and installed upon a concrete base which was two feet, one inch high, eight feet long and four and four-tenths feet wide at the widest part, and that it tapered down to a nose with a radius of one foot; that the narrowest part of the concrete base was towards

the person approaching the tracks; that as so erected it existed at the time the Haslam car collided with it on the night in question; that the cost of the erection of the signal and of its maintenance was borne equally by the Erie Railroad Company and the International Railway Company, but that the actual work of erecting and maintaining was done by the employees of the Erie Railroad Company; that at the time of said accident and since the erection of said signal Kenmore avenue was a public street and highway, one-half of which was in the city of Buffalo and one-half of which was in the town of Tonawanda, and that said street ran generally in an easterly and westerly direction; that at all of said times said Kenmore avenue was paved with asphalt and was thirty-six feet wide.

The claimants contend and they have offered proof to sustain such contention that from the time of the installation and erection of the said signal up to and including the time of the accident in the instant case there were no lights or other warnings on said signal to warn travelers approaching it on Kenmore avenue except said white prisms or reflectors; that these could be seen from a point only a few feet away from the signal on a dark, rainy, misty night such as existed at the time of this accident.

It is conceded that at the time of the accident no trains or cars were approaching the crossing and that the red warning lights were not flashing. It is the contention of the claimants, and they presented witnesses who so testified, that in the absence of these red flashing lights on such a night as this accident occurred the signal could be seen only a very short distance away, such a short distance that it would be impossible for the driver of an automobile to avoid it if headed directly for it.

The claimants further offered proof to show that there had been many other collisions with this signal prior to the time of this accident; so many, in fact, that the town board of the said town of Tonawanda had passed a resolution on the 30th day of March, 1931, setting forth the facts that vehicles were coming in contact with this signal and calling upon the Public Service Commission to immediately advise with the public service corporation for the purpose of either changing the existing signals at the place in question or of adding certain facilities to the signals in order that drivers of vehicles might be better able to observe such signal in the night.

Such resolution was duly forwarded to the Public Service Commission, but no attention was paid to it. Neither the Commission nor the railroad companies either removed the signals

or made any change in them so that they might be more easily discernible in the nighttime.

In view of the foregoing facts as disclosed by the testimony of the claimants' witnesses, the claimants here contend that this signal constituted a public nuisance in the highway and that as it was erected by the railroad companies under the authority and by the direction of the Public Service Commission that the State of New York thereby became liable in damages to those injured by such nuisance through no fault of their own. And they claim that this is especially so in this case because the Public Service Commission had due notice that this signal was such a nuisance and failed to remedy the situation.

We cannot say that there is no force in this contention. But it seems to us that the Public Service Commission is an independent agency of government created by the Legislature of the State for the purpose, as in the present case, of making orders and regulations under the police power of the State for the safety and welfare of the public. Such acts are of a judicial or *quasi* judicial nature, and constitute a function of government which does not place any responsibility for damages upon the State in any event. (*Barrett v. State*, 220 N. Y. 423; *Lawton* v. *Steele*, 152 U. S. 133; *People* v. *N. Y., N. H. & H. R. R. Co.*, 55 Hun, 409; *People ex rel. N. Y. Elec. Lines Co.* v. *Squire*, 107 N. Y. 593; *People ex rel. Loughran* v. *R. R. Commrs.*, 158 id. 421; *Matter of Edison Co.* v. *Maltbie*, 244 App. Div. 685; affd., 271 N. Y. 103.)

The claimants' cause of action, if they have one, is against the railroad companies who erected and maintained the signal in question. If the court finds that the erection and maintenance of such signal on their part constitutes negligence they are not relieved from liability for such negligence because the Public Service Commission approved and permitted such construction. (*McGettigan* v. *New York Central R. R. Co.*, 268 N. Y. 66.)

An order may be entered herein, therefore, granting the Attorney-General's motion to dismiss these claims which was made upon the trial and upon which decision was at that time reserved.

RYAN, J., concurs.