J. Daniel Fink, J.
This motion by plaintiff for judgment on the pleadings presents a question of first impression, stemming from amendments to subdivision (g) of section 8 of the Emergency Business Space Bent Control Law (L. 1945, ch. 314). The statute, as amended, appears to be without prior construction.
A chronology will serve to place the facts and the issue in their proper perspective.
On March 8, 1952, the New York State Temporary Commission to Study Rents and Rental Conditions submitted its report to the Legislature in which it recommended amendment to the laws controlling rents of business space in New York City. (N. Y. Legis. Doc., 1952, No. 61.)
Pertinent here is its recommendation reading as follows: ‘1 Under existing law, a statutory tenant can and in manv *701 instances has moved out without notice to the landlord. It has been decided, therefore, to require such a tenant to give at least thirty days notice of intention to vacate. The vacating of premises without notifying the landlord hereafter will subject the tenant to a liability of one month’s rent ” (p. 13; emphasis supplied).
Following the report, by chapter 417 of the Laws of 1952 (see L. 1953, ch. 451), the Legislature amended subdivision (g) of section 8 of the Emergency Business Space Bent Control Law by providing: “Any tenant, being in possession under an expired lease or tenancy or as a monthly or statutory tenant, who vacates premises without giving the landlord thirty days’ written notice hy registered mail of his intention to vacate shall be liable to the landlord for an additional month’s rent.” (Emphasis supplied.)
Thereafter, by chapter 809 of the Laws of 1959, subdivision (g) was again amended, effective July 1, 1959, to read: “ Any tenant, being in possession under an expired lease or tenancy or as a monthly or statutory tenant, who vacates premises without giving the landlord at least tioo months’ written notice by registered mail of his intention to vacate shall be liable to the landlord for an additional two months’ rent.” (Emphasis supplied.)
In approving the latter amendment the Governor stated: 1 ‘ Under the new provisions a statutory tenant must give two months ’ notice of his intention to vacate, rather than one month’s notice. Failure to do so may make him liable for two months’ rent. ’ ’
The facts are simple. During August, 1959, and prior thereto, defendant, as a statutory tenant, occupied office and basement space in an office building owned by plaintiff at 18 East 41st Street, Borough of Manhattan, City of New York. On August 25, 1959, defendant notified plaintiff by registered mail that it would vacate the space on September 30,1959. It is undisputed that in accordance with such notice, the defendant vacated the space on September 30, 1959, having paid all rent to and including such date.
Thereafter, plaintiff commenced this action against defendant to recover the sum of $1,100 for rent for the months of October and November, 1959, at the rate of $550 per month. Prior to the action, the defendant tendered to plaintiff rent in the sum of $550 for the month of October, 1959, in payment of any rent due, and such tender was rejected.
By its affirmative defenses, the defendant urges that when it gave written notice by registered mail on August 25, 1959, the *702 additional two months’ rent for which it became liable under the statute was for the two months of September and October, 1959 — and since rent for September, 1959 was paid and rent for October, 1959 was tendered and rejected, it should be held liable only for the latter.
The plaintiff contends that having failed to give at least two months’ notice as required by statute, the defendant is necessarily liable for rent of the premises occupied by it until it vacated, and argues further that the words “ an additional two months’ rent ” can mean only two months’ rent in addition to that which the defendant would, in any event, be obligated to pay for the use and occupation of the premises.
Obviously, the defendant failed to give ‘ ‘ at least ’ ’ two months ’ notice. The words ‘ ‘ at least ’ ’ are emphatic, and expressive of a minimum, to be equated as no less than. If this view be adopted, it would seem that the defendant’s notice was defective, thus subjecting it to liability for two additional months ’ rent after it removed from the premises.
Prior to enactment of such amendments to subdivision (g) of section 8 of the Emergency Business Space Rent Control Law, there was no duty or obligation on the part of a tenant to notify his landlord in advance of his removal or of his intention to remove from the premises. (Betty Jane Frocks v. Adlie Realty Corp., 9 Misc 2d 504, affd. 3 A D 2d 704, affd. 4 N Y 2d 750.) Nor was there any obligation or duty on the part of the tenant to notify his landlord pursuant to the provisions of section 232-a of the Real Property Law. (T. I. B. Corp. v. Repetto, 174 Misc. 501.) Having actually vacated, after giving notice of its intention to quit, the defendant may not be held liable for double rent under the provisions of section 229 of the Real Property Law.
It is, therefore, apparent that the rights of the parties must be determined solely on the basis of construction of subdivision (g) of section 8, as amended, and the determination of the legislative intent.
The imperfections of human language and the variant modes of expression in use among different individuals render it practically impossible that the language of any general legislative provision, which is intended to govern future cases, can be made so certain and explicit as not to admit of a doubt as to its proper interpretation or legal construction, when it is after-wards to be applied to the peculiar circumstances of- some particular case. For this reason it has been found necessary to establish a system of legal hermeneutics, or fixed principles of interpretation of legislative enactments, to ascertain the *703 meaning and intent of the lawgiver (Mayor, etc. of New York v. Lord, 18 Wend. 126, affg. 17 Wend. 285).
When the meaning of a statute is clear, construction is unnecessary ; in such a case, the duty of the court is to carry out the expressed legislative intent, not to read a different intent into the law by the aid of canons of construction. But, if the intent of the lawmaking body is not clear, and the construing power of the courts is therefore called into operation, they will be guided by the canons of interpretation, which long experience and the settled wisdom of the courts have uniformly approved (Billings v. Baker, 28 Barb. 343, affg. 15 How. Prae. 525).
In applying these canons of interpretation, it is the court’s duty to interpret the law, and not to legislate by judicial fiat.
In the interpretation of statutes the legislative intent is the primary consideration (Gilmore v. City of Utica, 121 N. Y. 561, 568; Hayden v. Pierce, 144 N. Y. 512); this intent is “ the grand central light in which all statutes must be read ” (Hudson Iron Co. v. Alger, 54 N. Y. 173, 175); and it is set forth as a rule of statutory construction that a phrase used in a statute must be read in the light of the origin and history of the statute (Dougan v. Van Riper, 109 Ore. 254), for a phrase standing and considered alone may import a meaning entirely at variance with the true legislative intent and the object of the enactment.
In establishing legislative intent, the literal meaning of the words must yield and not be permitted to defeat the general purpose and manifest policy intended to be promoted, considering the surrounding circumstances. (Matter of Capone v. Weaver, 6 N Y 2d 307, 309; People v. Ahearn, 196 N. Y. 221; Davis v. Supreme Lodge, 165 N. Y. 159, 167.)
Are the words u at least ” to be construed literally?
The real purpose of construction is the intent of the Legislature and to carry out such intent words are frequently given an enlarged or restricted meaning, and it is held that words which are plain enough in their ordinary sense will not be given their ordinary meaning when such meaning involves an absurdity, inconsistency, or when it is repugnant to the clear intention of the Legislature as collected from dependable sources of information (Weir v. Barker, 104 App. Div. 112). And, if a statute, viewed from the standpoint of the literal sense of the language, works an unjust or unreasonable result, an obscurity of meaning exists which calls for judicial construction (Matter of Meyer, 209 N. Y. 386, affg. 156 App. Div. 930).
It has been further held that ‘i the intent of the legislature is to be collected from the language of the statute, applied to the subject-matter, and in view of public and notorious facts *704 existing when the statute was enacted ” (Brown v. Mayor, 63 N. Y. 239, 244).
As observed, prior to the enactment of subdivision (g), as amended, there existed no common-law duty on the part of a tenant to notify his landlord in advance of intention to vacate, thereby making applicable the rule that: “ If the terms of the statute will admit of two interpretations, that which will most nearly conform to the rules of the common law is in all cases to be adopted.” (People v. Phyfe, 136 N. Y. 554, 558, 559.) (See, also, Berger v. City of New York, 260 App. Div. 402.)
Taking all these elements and features into consideration, I am convinced that, initially, the Temporary State Commission, and thereafter, the Legislature, intended the amendments under review as a counterbalance to the right granted by statute to tenants to remain in possession or remove at will, and as a means of protecting landlords against being caught short by the unexpected removal of tenants.
The obvious purpose of the notice required was to give a landlord an opportunity to re-rent or otherwise use the property. (Cf. J. C. H. Serv. Stas. v. Patrikes, 181 Misc. 401, 405.)
The effect of the notice here is to bind the tenant to pay the rent for a two-month period, and no more. If the defendant had moved on September 30,1959, and failed to give any notice, the resulting maximum liability would have been two months’ rent — but here the defendant did give notice, and although it was not “ at least ” two months’ notice, the object of the statute was achieved when the plaintiff received notice from the defendant that it intended to move. (Cf. 139 Jackson Prop. Corp. v. Ace Cabinet Corp. [County Court, Westchester], N. Y. L. J., Dec. 23, 1959, p. 11, col. 4.)
Such interpretation is reasonable and will accomplish the legislative object. To hold otherwise would serve to deprive the defendant of its rights as a statutory tenant. The defendant should not be obliged to pay three months’ rent, a violation of the clear and unmistakable legislative mandate. This finding accords with the sense and spirit of the commission’s report, and the mischief which the Legislature intended to correct (Leppard v. O’Brien, 225 App. Div. 162, 164). On the one hand it subjects the defendant to liability for two months’ rent, while, on the other hand, it prevents the plaintiff from gaining a windfall.
It is admitted that the plaintiff received one month’s rent which accrued subsequent to the receipt of the defendant’s written notice of intention to vacate. An additional month’s rent is all to which the plaintiff is entitled.
*705 However, the alleged tender to plaintiff prior to the commencement of the action was ineffectual. The defendant failed to comply with the provisions of section 174-a of the Civil Practice Act which requires the deposit of the amount tendered into court and thereafter pleading such deposit in its answer. The defendant is therefore subject to payment of interest and costs. (Watson v. Dynamic Instrument Corp., 153 N. Y. S. 2d 765, 767; Gold v. Churnin, 18 Misc 2d 440.)
Accordingly, judgment is granted to the plaintiff in the sum of $550, with interest from October 1, 1959, together with costs and disbursements.